104 Cal.Rptr.2d 821 (2001)
87 Cal.App.4th 756
Donald SOUDERS, et al., Plaintiffs and Appellants,
v.
PHILIP MORRIS INCORPORATED, etc., et al., Defendants and Respondents.
No. B141519.
Court of Appeal, Second District, Division Three.
March 7, 2001.
Review Granted May 16, 2001.
*824 Weinreb, Weinreb & Mandell, Robert J. Mandell, Northridge, and Mara E.J. Burnett, for Plaintiffs and Appellants.
Arnold & Porter, Maurice A. Leiter, James D. Layden, Navid Yadegar, Ronald C. Redcay; Sedgwick, Detert, Moran & Arnold, Los Angeles, Kevin Robert Costello, Santa Monica, and Ralph Campillo, Los Angeles, for Defendants and Respondents.
Carrie-Lee Coke, for California Manufacturers and Technology Association as Amicus Curiae on behalf of Defendants and Respondents.
PERLUSS, J.[*]
Plaintiffs and appellants Donald Souders, individually and as guardian ad litem for Sandra Souders, Barbara Souders, Ben Souders, Elizabeth Souders and Jessica Souders; Donald Souders, Jr.; David Souders; Ann Souders; and the Estate of Mary Schuler (the Souderses) appeal from a judgment of dismissal entered after the trial court sustained without leave to amend the demurrer of defendants and respondents Philip Morris Incorporated (Philip Morris) and Brown & Williamson Tobacco Corporation (B & W) to the personal injury and wrongful death causes of action in the complaint.
The sole question presented is whether the Souders' claims for injuries and wrongful death allegedly caused by smoking, which accrued in 1999, are barred by Civil Code section 1714.45 [1] in light of the 1997 amendment to that section eliminating the statutory immunity from products liability actions previously accorded tobacco manufacturers.[2]
*825 The Legislature clearly expressed its intent that amended section 1714.45 is to be applied to personal injury, wrongful death and other tort causes of action against tobacco manufacturers accruing on or after January 1, 1998. There is no constitutional impediment to application of amended section 1714.45 to causes of action accruing after its effective date. Accordingly, we reverse the judgment of dismissal.

FACTUAL AND PROCEDURAL BACKGROUND

1. Facts.[3]
Donald Souders and his wife Mary Schuler smoked cigarettes manufactured by Philip Morris and B & W for more than 30 years, beginning when they were both minors. On July 12, 1999 Donald Souders was diagnosed with emphysema and terminal heart disease attributable to his smoking. Mary Schuler died on July 20, 1999 as a result of damage to her heart caused by smoking.
Sandra, Barbara, Ben, Elizabeth, Jessica, Donald, Jr., David and Ann Souders are the children of Donald Souders and Mary Schuler and the surviving heirs of Mary Schuler.

2. The Proceedings.

The Souders filed this action against Philip Morris and B & W, as well as several other tobacco manufacturers and retailers on November 18, 1999.[4] The complaint contains causes of action for negligence, strict products liability and other torts, as well as claims for breach of express warranty and for violation of Business and Professions Code sections 17200 and 17500. The complaint alleges that Mary Schuler's death and Donald Souders's injuries were caused by smoking cigarettes manufactured by Philip Morris and B & W and that Philip Morris and B & W had engaged in wrongful conduct in connection with the manufacture and marketing of cigarettes dating from the 1950's.
Philip Morris and B & W demurred to the product liability causes of action on the ground that they were barred in their entirety by the provisions of former section 1714.45. The trial court sustained the demurrer, ruling that the 1997 amendment did not apply retroactively to conduct that occurred prior to its January 1, 1998 effective date. In its ruling the trial court noted that retroactive application of amended section 1714.45 would raise significant constitutional questions "which should generally be avoided if not necessary."
Although the trial court's tentative ruling had been to sustain the demurrer without leave to amend, at the request of the Souders' counsel, the Souders were granted leave to amend for the purpose of alleging wrongful conduct by Philip Morris and B & W occurring after January 1, 1998.
The Souders subsequently determined not to amend the complaint. The parties stipulated that the trial court's tentative ruling to sustain the demurrer to the first, second, third, fourth, fifth, eighth, ninth and tenth causes of action without leave to amend could be entered as the order of the court.[5] The parties additionally stipulated *826 that the only two remaining causes of action (the sixth and seventh) were dismissed with prejudice.
The order of dismissal was entered on May 3, 2000. The Souders filed a timely notice of appeal.

CONTENTIONS
The Souders contend that amended section 1714.45 applies to causes of action accruing on or after its effective date, January 1,1998.

DISCUSSION

1. Standard of review.

A demurrer tests the legal sufficiency of factual allegations in a complaint. (Title Ins. Co. v. Comerica Bank-California (1994) 27 Cal.App.4th 800, 807, 32 Cal. Rptr.2d 735.) In reviewing the sufficiency of a complaint against a general demurrer, this court treats the demurrer as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law. This court also considers matters that may be judicially noticed. When a demurrer is sustained, this court determines whether the complaint states facts sufficient to constitute a cause of action. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318, 216 Cal.Rptr. 718, 703 P.2d 58.)
A trial court's ruling sustaining a demurrer is erroneous if the facts alleged by the plaintiff state a cause of action under any possible legal theory. (Cantu v. Resolution Trust Corp. (1992) 4 Cal. App.4th 857, 879, 6 Cal.Rptr.2d 151; Pollack v. Lytle (1981) 120 Cal.App.3d 931, 939, 175 Cal.Rptr. 81.) To determine whether sufficient facts have been alleged to state a cause of action, we review the complaint de novo. (Cantu v. Resolution Trust Corp., supra, 4 Cal.App.4th at p. 879, 6 Cal.Rptr.2d 151.)

2. Civil Code Section 17U45.

a. The original version of section 1714.45: immunity from products liability actions.

The addition of section 1714.45 to the Civil Code in 1987 was part of a comprehensive agreement between opposing forces concerned with a wide range of tort reform issues in California. (See Assem. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Apr. 16, 1997; American Tobacco Co. v. Superior Court (1989) 208 Cal.App.3d 480, 486, 255 Cal.Rptr. 280.)
The Senate Judiciary Report on Senate Bill No. 241 (1987-1988 Reg. Sess.), the Willie L. Brown, Jr.Bill Lockyer Civil Liability Reform Act of 1987,[6] which included section 1714.45, states, "`The purpose of this bill is to enact a compromise agreement on procedural and substantive civil liability reforms which has been reached between competing interests such as the plaintiffs' trial lawyers, insurers, doctors, and manufacturing and business groups.'" (American Tobacco Co. v. Superior Court, supra, 208 Cal.App.3d at pp. 487-88, fn. 3, 255 Cal.Rptr. 280.)
As originally enacted in 1987, effective January 1, 1988, section 1714.45 provided:
"(a) In a product liability action, a manufacturer or seller shall not be liable if:
"(1) The product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community; and
"(2) The product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, tobacco, and butter, as identified in comment *827 i to Section 402A of the Restatement (Second) of Torts.
"(b) For purposes of this section, the term `product liability action' means any action for injury or death caused by a product, except that the term does not include an action based on a manufacturing defect or breach of an express warranty.
"(c) This section is intended to be declarative of and does not alter or amend existing California law, including Cronin v. J.B.E. Olson Corp., (1972) 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153[7], and shall apply to all product liability actions pending on, or commenced after, January 1, 1988." (Stats.1987, ch. 1498, § 3, pp. 5778-5779.)
In its original form section 1714.45 provided "automatic immunity for manufacturers of the enumerated consumer products," including tobacco. (American Tobacco Co. v. Superior Court, supra, 208 Cal.App.3d at p. 489, 255 Cal.Rptr. 280.) "It was commonly understood that the measure embodying section 1714.45, which enjoyed the active or at least tacit support of [the Association of California Insurance Companies, the Association for California Tort Reform, the California Medical Association, the California Trial Lawyers Association and the California Chamber of Commerce], would provide nearly complete immunity for manufacturers of the five enumerated products." (Id. at p. 487, 255 Cal.Rptr. 280.)

b. The first 1997 amendment: public entity lawsuits.

Effective June 12, 1997, the Legislature amended the original version of section 1714.45 by adding to the statute as an urgency measure new subdivision "(d)," relating to the application of section 1714.45 to actions brought by public entities against tobacco companies:
"(d) This section does not apply to, and never applied to, an action brought by a public entity to recover the value of benefits provided to individuals injured by a tobacco-related illness caused by the tortious conduct of a tobacco company or its successor in interest, including, but not limited to, an action brought pursuant to Section 14124.71 of the Welfare and Institutions Code. In such an action brought by a public entity, the fact that the injured individual's claim against the defendant may be barred by this section shall not be a defense. This subdivision does not constitute a change in, but is declaratory of, existing law relating to tobacco products." (Stats. 1997, ch. 25, § 2.)
This addition to section 1714.45 was intended as a "clarification" of the law with respect to tobacco products to facilitate the filing of a civil action by the California Attorney General against tobacco companies to recover tobacco-related costs incurred by the State. (Stats.1997, ch. 25, § 1.)

c. The 1997 amendment: eliminating the tobacco manufacturers' immunity.

Effective January 1, 1998, section 1714.45 was amended to delete "tobacco" from subdivision (a), enumerating those consumer items entitled to statutory immunity from product liability actions, and to state explicitly that this section does not exempt the manufacture or sale of tobacco products by tobacco manufacturers from product liability actions. Additional changes were made to reflect the Legislature's intent in enacting this amendment. As amended, section 1714.45 provided:
*828 "(a) In a product liability action, a manufacturer or seller shall not be liable if both of the following apply:
"(1) The product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community.
"(2) The product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, and butter, as identified in comment i to Section 402A of the Restatement (Second) of Torts.
"(b) This section does not exempt the manufacture or sale of tobacco products by tobacco manufacturers and their successors in interest from product liability actions, but does exempt the sale or distribution of tobacco products by any other person, including, but not limited to, retailers or distributors.
"(c) For purposes of this section, the term `product liability action' means any action for injury or death caused by a product, except that the term does not include an action based on a manufacturing defect or breach of an express warranty.
"(d) This section is intended to be declarative of and does not alter or amend existing California law, including Cronin v. J.B.E. Olson Corp., (1972) 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153, and shall apply to all product liability actions pending on, or commenced after, January 1, 1988.
"(e) This section does not apply to, and never applied to, an action brought by a public entity to recover the value of benefits provided to individuals injured by a tobacco-related illness caused by the tortious conduct of a tobacco company or its successor in interest, including, but not limited to, an action brought pursuant to Section 14124.71 of the Welfare and Institutions Code. In such an action brought by a public entity, the fact that the injured individual's claim against the defendant may be barred by a prior version of this section shall not be a defense. This subdivision does not constitute a change in, but is declaratory of, existing law relating to tobacco products.
"(f) It is the intention of the Legislature in enacting the amendments to subdivisions (a) and (b) of this section adopted at the 1997-98 Regular Session to declare that there exists no statutory bar to tobacco-related personal injury, wrongful death, or other tort claims against tobacco manufacturers and their successors in interest by California smokers or others who have suffered or incurred injuries, damages, or costs arising from the promotion, marketing, sale, or consumption of tobacco products. It is also the intention of the Legislature to clarify that such claims which were or are brought shall be determined on their merits, without the imposition of any claim of statutory bar or categorical defense.
"(g) This section shall not be construed to grant immunity to a tobacco industry research organization." (Stats.1997, ch. 570, § 1.)[8]
Section 2 of Senate Bill No. 67 (1997-1998 Reg. Sess.) contained the Legislature's declaration that the 1997 amendment "restores those common law rules [for product liability actions] with respect to the manufacture or sale of tobacco products by tobacco manufacturers and their successors in interest." (Stats.1997, ch. 570, § 2.) The 1997 amendment did not affect other, traditional liability defenses available to tobacco companies in responding to product liability lawsuits. (See Assem. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Apr. 16, 1997.)

*829 3. Amended section 171445 applies to products liability actions that accrued on or after January 1, 1998.

a. The Souders' causes of action accrued in July 1999, after the effective date of amended section 171445.

Until the last element essential to a cause of action occurs, an action has not yet accrued. (Spear v. California State Auto. Assn. (1992) 2 Cal.4th 1035, 1040, 9 Cal.Rptr.2d 381, 831 P.2d 821; Neel v. Magana, Olney, Levy, Cathcart & Gelfand (1971) 6 Cal.3d 176, 187, 98 Cal. Rptr. 837, 491 P.2d 421.) "The general rule for defining the accrual of a cause of action sets the date as the time when, under the substantive law, the wrongful act is done, or the wrongful result occurs, and the consequent liability arises. [Citation.] In other words, it sets the date as the time when the cause of action is complete with all of its elements [citations] the elements being generically referred to by sets of terms such as Svrongdoing' or `wrongful conduct,' `cause' or `causation,' and `harm' or `injury.' [Citations.]" (Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 397, 87 Cal.Rptr.2d 453, 981 P.2d 79 [internal quotation marks omitted].) "[H]arm or injury to the plaintiff is an essential element of a ripe cause of action in negligence or strict liability." (Buttram v. Owens-Corning Fiberglas Corp. (1997) 16 Cal.4th 520, 531, fn. 4, 66 Cal.Rptr.2d 438, 941 P.2d 71.) To be actionable, moreover, the injury alleged generally must be something more than nominal damages, speculative harm, or the threat of future injury. (Ibid.)
Based on the allegations in the complaint, for statute of limitations and most other purposes, Donald Souders's personal injury causes of action for latent injuries caused by smoking accrued on or about July 12, 1999 when he was first diagnosed with emphysema and terminal heart disease. "[F]or statute of limitations purposes, it is well settled that a cause of action for a latent injury does not accrue until the plaintiff discovers or reasonably should have discovered that he has suffered a compensable injury." (Buttram v. Owens-Corning Fiberglas Corp., supra, 16 Cal.4th at p. 530, 66 Cal.Rptr.2d 438, 941 P.2d 71; Jolly v. Eli Lilly & Co. (1988) 44 Cal.3d 1103, 1109-1110, 245 Cal.Rptr. 658, 751 P.2d 923; G.D. Searle & Co. v. Superior Court (1975) 49 Cal.App.3d 22, 25, 122 Cal.Rptr. 218; see Warren v. Schecter (1997) 57 Cal.App.4th 1189, 1204-1205, 67 Cal.Rptr.2d 573.)
For statute of limitations and most other purposes, the Souders' wrongful death cause of action based on the smoking-related death of Mary Schuler accrued on July 20, 1999, the date of her death. (Madison v. Superior Court (1988) 203 Cal.App.3d 589, 596, 250 Cal.Rptr. 299 ["`[t]he longstanding rule is that a wrongful death action is a separate and distinct right belonging to the heirs, and it does not arise until the death of the decedent. [Citation.]'"]; see Larcher v. Wanless (1976) 18 Cal.3d 646, 659, 135 Cal.Rptr. 75, 557 P.2d 507 [Code Civ. Proc, § 340.5, providing that limitations period begins to run from time of "injury" on a cause of action for medical malpractice does not change rule in wrongful death actions; the "injury" is the wrongfully caused death of plaintiffs decedent].)

b. Application of amended section 171445 to pre-1998 conduct by tobacco manufacturers is a "retroactive" application of the 1997 amendment.

Although the causes of action pleaded in the complaint unquestionably accrued after January 1, 1998, Philip Morris and B & W argue that application of amended section 1714.45 to permit the Souders to proceed with their products liability action would constitute a retroactive application of the 1997 amendment because the conduct on *830 which their claims are based all took place prior to January 1, 1998.[9] We agree.
From 1988 to January 1, 1998, section 1714.45 provided tobacco manufacturers with very broad immunity from lawsuits based on smoking-related injuries. (American Tobacco Co. v. Superior Court, supra, 208 Cal.App.3d at pp. 486-487, 255 Cal.Rptr. 280.) To the extent of the immunity afforded, the tobacco companies had "no `fault' or responsibility, in the legal sense, for harm caused by their products." (Richards v. Owens-Illinois, Inc. (1997) 14 Cal.4th 985, 989, 60 Cal.Rptr.2d 103, 928 P.2d 1181.)[10]
The 1997 amendment effected a significant change in the law, "restor[ing] those common law rules [for product liability actions] with respect to the manufacture or sale of tobacco products by tobacco manufacturers and their successors in interest." (Stats.1997, ch. 570, § 2 [uncodified portion of Sen. Bill No. 67 (1997-1998 Reg. Sess.) ].) The Legislature not only eliminated tobacco from the list of consumer products covered by section 1714.45, subdivision (a), but also added a new subdivision (b), which expressly provides that amended section 1714.45 "does not exempt the manufacture or sale of tobacco products by tobacco manufacturers and their successors in interest from product liability actions...." (§ 1714.45, subd. (b).)
A statute has retroactive effect if it substantially changes the legal effect of past events. (20th Century Ins. Co. v. Garamendi (1994) 8 Cal.4th 216, 281, 32 Cal.Rptr.2d 807, 878 P.2d 566; Kizer v. Hanna (1989) 48 Cal.3d 1, 7, 255 Cal.Rptr. 412, 767 P.2d 679; Aktar v. Anderson (1997) 58 Cal.App.4th 1166, 1182, 68 Cal. Rptr.2d 595.) "A statute does not operate `retrospectively' merely because it is applied in a case arising from conduct ante-dating the statute's enactment [citation], or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." (Landgraf v. USI Film Products (1994) 511 U.S. 244, 269-270, 114 S.Ct. 1483, 128 L.Ed.2d 229, fn. omitted; Kizer v. Hanna, supra, 48 Cal.3d at p. 7, 255 Cal.Rptr. 412, 767 P.2d 679.)
The 1997 amendment potentially imposes significant liability on the tobacco industry for past conduct that for 10 years enjoyed statutory immunity from suit. Analyzing the "nature and extent" of the change in the law and the "degree of connection" between the operation of the new rule and the relevant past events or conduct (Landgraf v. USI Film Products, supra, 511 U.S. at p. 270, 114 S.Ct. 1483), we have no doubt that permitting a product liability action to proceed based on a plaintiffs (or the plaintiffs decedent's) pre-1998 use of tobacco products constitutes a retroactive application of amended section 1714.45, even if the cause of action did not accrue prior to the amended statute's effective date. (Landgraf v. USI Film Products, supra, 511 U.S. at p. 280, 114 S.Ct. 1483 [rule that increases a party's liability for past conduct or imposes new duties with respect to transactions already completed operates retroactively].) However, as we discuss in the next section of this opinion, we believe that the Legislature plainly intended such a result.

c. The Legislature clearly indicated its intention that amended section 171445 apply to causes of action accruing on or after its effective date regardless of the date on which the actionable conduct occurred.

Statutes do not operate retroactively unless the Legislature clearly indicates *831 its intent that they do so. (Western Security Bank v. Superior Court (1997) 15 Cal.4th 232, 243, 62 Cal.Rptr.2d 243, 933 P.2d 507; Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 1208-1209, 246 Cal. Rptr. 629, 753 P.2d 585; see Civ.Code, § 3 [no part of the Civil Code is retroactive "unless expressly so declared"[11]].) The Legislature's intent with regard to prospective or retroactive application may be determined either from the language in the statute itself or, if the extrinsic sources are sufficiently clear, legislative history. (Western Security Bank v. Superior Court, supra, 15 Cal.4th at p. 243, 62 Cal. Rptr.2d 243, 933 P.2d 507; Evangelatos v. Superior Court, supra, 44 Cal.3d at pp. 1209-1210, 246 Cal.Rptr. 629, 753 P.2d 585.) The general presumption against retroactive application of statutes is subordinate to "the transcendent canon of statutory construction that the design of the Legislature be given effect." (In re Marriage of Bouquet, supra, 16 Cal.3d at p. 587, 128 Cal.Rptr. 427, 546 P.2d 1371.)
Both the text of amended section 1714.45 and the legislative history clearly indicate the Legislature's intent that the 1997 amendment apply to causes of action that accrued after the amendment's effective date.[12]

i. The language of amended section 1714.45 clearly indicates the Legislature's intent that it apply to all causes of action accruing after its effective date.

Amended section 1714.45, subdivision (f), expressly declares the intention of the Legislature in adopting the amendments to subdivisions (a) and (b), described above: "It is the intention of the Legislature in enacting the amendments to subdivisions (a) and (b) of this section adopted at the 1997-98 Regular Session to declare that there exists no statutory bar to tobacco-related personal injury, `wrongful death, or other tort claims against tobacco manufacturers and their successors in interest by California smokers or others who have suffered or incurred injuries, damages, or costs arising from the promotion, marketing, sale, or consumption of tobacco products. It is also the intention of the Legislature to clarify that those claims that were or are brought shall be determined on their merits, without the imposition of any claim of statutory bar or categorical defense." (Emphasis added.)
In construing this statement of intent, we must look to the statute's words and give them their usual and ordinary meaning (White v. Ultramar, Inc. (1999) 21 Cal.4th 563, 572, 88 Cal.Rptr.2d 19, 981 P.2d 944), while avoiding if at all possible a construction that would render some words meaningless or surplusage. (Steketee v. Lintz, Williams & Rothberg (1985) 38 Cal.3d 46, 52, 210 Cal.Rptr. 781, 694 P.2d 1153.) In addition, the statutory language "must be construed in context, keeping in mind the nature and obvious purpose of the statute where [it] appear[s]. [Citations.]" (Id. at p. 52, 210 Cal.Rptr. 781, 694 P.2d 1153, internal quotation marks omitted.)
The first sentence of amended section 1714.45, subdivision (f), expressly states that the 1997 amendment eliminates the prior statutory immunity for tort claims by California smokers "who have suffered or incurred injuries." The ordinary and usual meaning of that statement is clearthe Legislature is currently eliminating an immunity for conduct causing injuries that occurred in the past. Similarly, the second *832 sentence of subdivision (f) declares that "those claims that were or are brought shall be determined on their merits...." Again, the ordinary meaning of that language plainly covers not only claims brought in the future based on future conduct but also claims relating to past conduct previously covered by former section 1714.45's grant of immunity.
If the Legislature had intended that amended section 1714.45 have purely prospective effect, applying only to smoking-related injuries caused by conduct occurring on or after January 1, 1998, there would have been no reason to include language indicating that past injuries and actions were within the scope of the 1997 amendment. The phrases "have suffered or incurred injuries" and "claims that were or are bought" would be at best mere surplusage.
The Legislature's selection of verb tense in these two statements is properly accorded substantial significance. (Hughes v. Board of Architectural Examiners (1998) 17 Cal.4th 763, 776, 72 Cal.Rptr.2d 624, 952 P.2d 641; People v. Loeun (1997) 17 Cal.4th 1, 10-11, 69 Cal.Rptr.2d 776, 947 P.2d 1313.) There is no compelling reason to disregard that language in the statute or to ignore the common interpretation of the words used by the Legislature. (Steketee v. Lintz, Williams & Rothberg, supra, 38 Cal.3d at p. 52, 210 Cal.Rptr. 781, 694 P.2d 1153.)
In response to this textual analysis of amended section 1714.45, subdivision (f), Philip Morris and B & W advance two arguments that fail to consider fully the language and structure of the 1997 amendment. First, Philip Morris and B & W contend that, viewed from some point in the future, the reference to past injuries and use of the past tense in subdivision (f) could refer to injuries that occurred after January 1, 1998. Therefore, they dismiss the use of that language as too uncertain to support a finding of clear legislative intent regarding retroactivity.
The argument of Philip Morris and B & W, however, ignores the fact that amended section 1714.45, subdivision (f), itself contains the time reference for its use of present and past tense: The subdivision states that "[i]t is the intention of the Legislature in enacting the amendments ... adopted at the 1997-98 Regular Session to declare that there exists...." There is simply no warrant for positing some future date for an exegesis of the language employed.
Philip Morris and B & W also point to amended section 1714.45, subdivision (e), concerning the right of public entities to sue tobacco companies to recover the value of benefits provided to injured smokers. That subdivision, they correctly note, now provides "[i]n the action brought by a public entity, the fact that the injured individual's claim against the defendant may be barred by a prior version of this section shall not be a defense."[13] Philip Morris and B & W argue that, if the 1997 amendment were fully retroactive, there would be no need for the Legislature even to mention the possibility that claims of injured individuals might be barred by the earlier version of the statute.
Philip Morris and B & W may be correct. But whatever amended section 1714.45, subdivision (e) may portend in terms of the applicability of the 1997 amendment to private causes of action that accrued prior to January 1, 1998, nothing in the language of this subdivision is inconsistent *833 with the application of the 1997 amendment to those causes of action that did not accrue until after the effective date of the legislation.

ii. The legislative history of the 1997 amendment supports application to claims accruing after its effective date.

The limited legislative history of amended section 1714.45 also confirms the Legislature's intent that the 1997 amendment apply to causes of action that accrued after its effective date. (See Evangelatos v. Superior Court, supra, 44 Cal.3d at p. 1209, 246 Cal.Rptr. 629, 753 P.2d 585.)
Senate Bill No. 67, as originally proposed, did not contain what became subdivision (f) of section 1714.45 or any other declaration of legislative intent. (Sen. Bill No. 67 (1997-1998 Reg. Sess.) § 1, introduced Dec. 11, 1996.) In anticipation of an April 1997 hearing on the bill, the Senate Judiciary Committee noted that "[s]ome concern has been expressed that SB 67 would apply only to causes of action arising on or after January 1, 1998, assuming it is enacted this year. In the absence of specific language in the legislation specifying retroactive application, a measure will operate prospectively only upon its enactment." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Feb. 14, 1997 [Appen. at p. 179], emphasis added.) Thereafter, a new subdivision[14] was added to the pending legislation containing the declaration of legislative intent analyzed above. (Sen. Bill No. 67 (1997-1998 Reg. Sess.) § 1, subd. (d) as amended Apr. 16,1997.)
It is most likely, as the Souders argue, that section 1714.45, subdivision (f), was added to address the concern noted by the Senate Judiciary Committee regarding the issue of full retroactivity for the 1997 amendment. For purposes of the case at bar, however, what is more significant is that even without subdivision (f) the Senate Judiciary Committee's view was the 1997 amendment would apply to causes of action, like the Souders', accruing after the effective date of the legislation. The subsequent addition of the language in subdivision (f) to the pending legislation reinforces that conclusion.

d. Purely prospective application of amended section 1714.45 would frustrate the Legislature's intent.

Finally, to construe amended section 1714.45 to permit only lawsuits based on injuries caused by the use of tobacco products after January 1, 1998 would significantly undermine the purpose for which the legislation was enactedto "restore" the common law rules for product liability actions with respect to the manufacture and sale of tobacco products by tobacco manufacturers (Stats.1997, ch. 570, § 2) and thereby to reduce the consumption of tobacco products and associated health care costs. (See Assem. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Apr. 16, 1997.)
The public policy considerations animating the introduction and ultimate passage of the 1997 amendment are described in three portions of the Assembly Judiciary Committee Report on Senate Bill No. 67. First, the report quotes the bill's author, Senator Kopp, in support of proposed change: "Evidence has now become available showing tobacco companies may have deliberately manipulated the level of nicotine, a powerfully addictive substance, in tobacco products so as to create and sustain addiction in smokers. In addition, evidence shows the tobacco companies have systematically suppressed and concealed material information and waged an *834 aggressive campaign of disinformation about the health consequences of tobacco use." (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Apr. 16, 1997; see also Sen. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Feb. 14, 1997 [Appen. at p. 179].)
Next, the report includes an argument in support of passage from the California Medical Association (CMA), which it describes as "one of the main participants in the tort reform package of 1987" [15]: "At the time, it was not anticipated that the California courts would interpret this [section 1714.45] so broadly. Over the last decade, we have also learned much regarding the addictive nature of tobacco and the industry's intentional efforts to mislead the public on the health effects of tobacco. This, coupled with the courts' broad interpretation of the California statute, has precipitated the need to change that statute and remove tobacco's liability protections." (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Apr. 16, 1997.)
Finally, the report includes an argument proffered by the California Healthcare Association: "Meritorious claims against tobacco products could significantly reduce the amount of consumption of tobacco products and reduce health care costs for all Californians. In addition, reducing tobacco consumption would significantly improve the public health statistics of Californians." (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Apr. 16,1997.)
While these statements included in legislative committee evaluations of Senate Bill No. 67 provide no direct evidence on the Legislature's decision whether to give the 1997 amendment retroactive effect, they are legitimate aids in determining legislative intent. (Southern Cal. Gas Co. v. Public Utilities Com. (1979) 24 Cal.3d 653, 659, 156 Cal.Rptr. 733, 596 P.2d 1149.) Statements in committee reports concerning the statute's objects and purposes cannot be dismissed as simply opinions of individual legislators or "self-interested third parties" and therefore unworthy of consideration, as Philip Morris and B & W assert. Committee reports are part of a statute's legislative history and may be utilized in construing uncertain statutory language. (Hutnick v. United States Fidelity & Guaranty Co. (1988) 47 Cal.3d 456, 465, fn. 7, 253 Cal.Rptr. 236, 763 P.2d 1326; American Tobacco Co. v. Superior Court, supra, 208 Cal.App.3d at pp. 486-487, 255 Cal.Rptr. 280.) Letters regarding the purpose of legislation published by the Legislature are also properly considered in interpreting a statute "when the expression of intent appears to convey more than merely a personal view of the proponent of the bill." (Roberts v. City of Palmdale (1993) 5 Cal.4th 363, 377-378, 20 Cal.Rptr.2d 330, 853 P.2d 496; California Teachers Assn. v. San Diego Community College Dist. (1981) 28 Cal.3d 692, 700, 170 Cal.Rptr. 817, 621 P.2d 856.)
Policy considerations alone, of course, are not sufficient to require retroactive application of a new statute. (Evangelatos v. Superior Court, supra, 44 Cal.3d at p. 1213, 246 Cal.Rptr. 629, 753 P.2d 585.) But understanding the public policy animating passage of legislation is no more irrelevant to our analysis of retroactivity than it is to any other aspect of statutory construction. (In re Marriage of Bouquet, supra, 16 Cal.3d at p. 587, 128 Cal.Rptr. 427, 546 P.2d 1371.) When combined with the language of amended section 1714.45, subdivision (f) and the related, supportive legislative history, this policy confirms the Legislature's intent to apply amended section 1714.45 to causes of action accruing on or after its effective date.

*835 4. Application of amended section 17U.45 to causes of action accruing on or after its effective date is not constitutionally prohibited.

When the Legislature clearly intends a statute to operate retroactively, that intent must be enforced unless retroactivity is barred by constitutional constraints. (Western Security Bank v. Superior Court, supra, 15 Cal.4th at pp. 243-244, 62 Cal.Rptr.2d 243, 933 P.2d 507.) Retroactive application of a statute may be unconstitutional if it is an ex post facto law, if it impairs the obligation of a contract or if it deprives a person of a substantive right without due process of law. (In re Marriage of Buol (1985) 39 Cal.3d 751, 756, 218 Cal.Rptr. 31, 705 P.2d 354.) Because we are not concerned in this case with either criminal legislation or contract rights, the constitutional question is one of due process only, as guaranteed by article I, section 7 of the California Constitution and the Fourteenth Amendment of the United States Constitution. Those provisions ensure that "vested" rights cannot be retroactively impaired without sufficient justification or in an irrational or arbitrary manner. (See generally In re Marriage of Bouquet, supra, 16 Cal.3d at pp. 591-592, 128 Cal.Rptr. 427, 546 P.2d 1371; Bank of America v. Angel View Crippled Children's Foundation (1999) 72 Cal.App.4th 451, 458-459, 85 Cal.Rptr.2d 117; Yoshioka v. Superior Court (1997) 58 Cal.App.4th 972, 982-983 & fn. 2, 68 Cal.Rptr.2d 553.)

a. Existence of a "vested" or substantive right.

Former section 1714.45 granted tobacco companies a broad statutory immunity from product liability actions, although the exact substantive scope of that protection had not been determined. (Richards v. Owens-Illinois, Inc., supra, 14 Cal.4th at p. 1003, fn. 8, 60 Cal.Rptr.2d 103, 928 P.2d 1181.)[16] Amended section 1714.45 retracts that immunity, while leaving in place common law defenses to product liability lawsuits. (See Assem. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Apr. 16, 1997.) As applied to a cause of action that had not yet accrued at the time the 1997 amendment became effective, we do not believe that the Legislature's rescission of the statutory bar to suit impaired a "vested right" of the tobacco companies.[17]
More than 70 years ago our Supreme Court distinguished between statutes retroactively affecting common law rights and those affecting rights based on statute: Common law rights were classified as "vested"; rights created by statute were not. (Callet v. Alioto (1930) 210 Cal. 65, 68, 290 P. 438.) "The justification for this rule is that all statutory remedies are pursued with full realization that the legislature may abolish the right to recover at any time." (Id. at pp. 67-68, 290 P. 438; accord, Younger v. Superior Court (1978) 21 Cal.3d 102, 109, 145 Cal.Rptr. 674, 577 P.2d 1014; but see Flournoy v. State of California, supra, 230 Cal.App.2d at pp. 531-532, 41 Cal.Rptr. 190 ["resting decision upon the distinction between statutory and common law rights is neither justified by reason nor rule"].)
In Graczyk v. Workers' Comp. Appeals Bd. (1986) 184 Cal.App.3d 997, 229 Cal. Rptr. 494, for example, the appellate court affirmed retroactive application of a statutory change limiting the definition of "employee" under the worker's compensation law, holding there could be no constitutional *836 objection to the retroactive operation of the statute because the applicant had no "vested right" to his status as an employee at the time of injury: "Because it is a creature of statute, the right of action exists only so far and in favor of such person as the legislative power may declare." (Id. at p. 1007, 229 Cal.Rptr. 494.) Similarly, the right to recover specific types of damages, specifically damages for pain and suffering, is not a vested right "because such rights are created by state and common law independent from the Constitution." (Yoshioka v. Superior Court, supra, 58 Cal.App.4th at p. 982, 68 Cal.Rptr.2d 553 [upholding the retroactive application of Proposition 213's prohibition of the recovery of noneconomic damages by uninsured motorists]; accord, Honsickle v. Superior Court (1999) 69 Cal.App.4th 756, 765, 82 Cal.Rptr.2d 36 [adopting reasoning of Yoshioka].)
Although these cases deal with affirmative rights, rather than defenses, no reasoned basis exists for declining to apply their rationale here. Before 1988 the tobacco companies had the right to assert common law defenses in product liability actions. With former section 1714.45, based on then-applicable policy considerations, the Legislature supplemented those defenses with a statutory grant of immunity. In 1997, based on a shift in public policy, the Legislature repealed the prior statutory grant, while leaving in place preexisting common law defenses. The legislative judgments embodied in these decisions regarding which defenses should be available in product liability cases involving smoking-related injuries are not arbitrary or irrational, and fall within the well-established authority of the Legislature "to determine what is and what is not an actionable tort, and to decide the conditions under which suits for these alleged wrongs will be entertained." (Hung v. Wang (1992) 8 Cal.App.4th 908, 921-922, 11 Cal.Rptr.2d 113.)
In contrast to our analysis of former section 1714.45, in In re Marriage of Garcia (1998) 67 Cal.App.4th 693, 79 Cal. Rptr.2d 242, without reaching the constitutional issue, the appellate court held that the ability to raise a statutory defense of lack of diligence in an action to enforce a support award "was tantamount to a vested right that was eliminated in 1993 [by amendment to the operative statute]."[18] Analysis of former section 1714.45's bar to product liability actions as "tantamount to a vested right" of the tobacco companies, however, does not alter our conclusion that application of the 1997 amendment to causes of action accruing on or after its effective date is not constitutionally prohibited.

b. Application of amended section 17H.U5 to all causes of action accruing on or after January 1, 1998 is a reasonable exercise of the state's police power.

"The vesting of property rights ... does not render them immutable: Vested rights, of course, may be impaired with due process of law under many circumstances." (In re Marriage of Bouquet, supra, 16 Cal.3d at p. 592, 128 Cal.Rptr. 427, 546 P.2d 1371 [state's interest in equitable dissolution of marital relationship supported use of police power to abrogate rights in marital property that derived from unfair former law], fn. and internal quotation marks omitted.) "[T]he state, exercising its police power, may impair *837 [vested] rights when considered reasonably necessary to protect the health, safety, morals and general welfare of the people. [Citation.]." (In re Marriage of Buol, supra, 39 Cal.3d at pp. 760-761, 218 Cal. Rptr. 31, 705 P.2d 354.)
Determining whether a particular retroactive provision violates due process by impairing a vested right requires weighing several factors: "`the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions.'" (In re Marriage of Buol, supra, 39 Cal.3d at p. 761, 218 Cal.Rptr. 31, 705 P.2d 354, quoting In re Marriage of Bouquet, supra, 16 Cal.3d at p. 592, 128 Cal.Rptr. 427, 546 P.2d 1371; Yoshioka v. Superior Court, supra, 58 Cal.App.4th at p. 983, 68 Cal. Rptr.2d 553.) When retroactive application is necessary "`to subserve a sufficiently important state interest,'" however, the inquiry "need proceed no further." (In re Marriage of Buol, supra, 39 Cal.3d at p. 761, 218 Cal.Rptr. 31, 705 P.2d 354.)

i. The significance of the state interest.

The important public policy interests to be served by enactment of the 1997 amendment to former section 1714.45 are articulated in the language of amended section 1714.45 itself, in the uncodified portion of the statute (Stats.1997, ch. 570, § 2) and in the legislative committee reports discussed above. (See Southern Cal. Gas Co. v. Public Utilities Com., supra, 24 Cal.3d at 659, 156 Cal.Rptr. 733, 596 P.2d 1149 ["[s]tatements in legislative committee reports concerning the statutory objects and purposes which are in accord with a reasonable interpretation of the statute are legitimate aids in determining legislative intent."].)[19]
The primary objective of the legislation was to restore the common law rules for product liability actions (Stats.1997, ch. 570, § 2, [1997 amendment "restores the common law rules with respect to the manufacture or sale of tobacco products...."]), and thereby to allow litigation on the merits against tobacco manufacturers (§ 1714.45, subd. (f)), in light of evidence that had developed since adoption of former section 1714.45 concerning the addictive nature of tobacco (including the possibility that levels of nicotine had been deliberately manipulated by tobacco manufacturers) and the tobacco industry's intentional efforts to mislead the public on the health effects of tobacco. (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Apr. 16, 1997; Sen. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Feb. 14, 1997 [Appen. at p. 179].) The 1997 amendment was also intended, as a consequence of allowing meritorious litigation to proceed to trial and judgment, to reduce the deaths and other serious health problems that result from the use of tobacco products, as well as the costs associated with smoking-related illnesses. (See Assem. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Apr. 16, 1997.)

ii. The importance of retroactive application to the state's interest.

Application of amended section 1714.45 to causes of action accruing on or after January 1, 1998 is vital to the effectuation of the primary purpose of the 1997 amendment, restoring the right of Californians suffering from smoking related illnesses to pursue product liability actions against tobacco manufacturers. Indeed, if amended section 1714.45 were limited not only to claims accruing after its effective date but *838 also to conduct by the tobacco industry on or after January 1, 1998, only teenage smokers (or perhaps pre-teens) would be able to pursue product liability actions against tobacco manufacturers, thereby depriving several generations of Californians of the intended benefits of the legislation. The public interest would thereby be severely damaged. (See In re Marriage of Bouquet, supra, 16 Cal.3d at p. 594 & fn. 11, 128 Cal.Rptr. 427, 546 P.2d 1371 [retroactive application of amended statute to rectify inequities resulting from former law serves important state interest].)

iii. The nature of the tobacco manufacturers' reliance on former section 1714.45.

The significance to the tobacco industry of the statutory bar to suit contained in former section 1714.45 cannot be denied. Reliance on the state of the former law, however, is not a viable argument. First, the Souders' complaint alleges that Donald Souders and Mary Schuler began smoking some time prior to 1969approximately 20 years before former section 1714.45 was first enacted. While former section 1714.45, subdivision (c) may have applied retroactively to preclude most forms of tort liability for pre 1988 conduct (see Stats.1987, ch. 1498, § 3, p. 5779), most assuredly the tobacco industry did not rely in those years on the possible future adoption by the California Legislature of a statutory defense to lawsuits based on the manufacture and marketing of tobacco products. Any such claim of reliance is inherently unreasonable.
Second, there is absolutely no basis for concluding on the record before us that tobacco manufacturers changed their conduct either after adoption of former section 1714.45 in 1987 in reliance on the legislative grant of immunity or in 1997 in response to the repeal of the statutory bar to product liability actions against the tobacco industry. There simply is no evidence of any actual reliance on the statutory bar by tobacco manufacturers during the 10-year period that former section 1714.45 was in effect.[20] To the extent the record is deficient in this regard, responsibility lies with Philip Morris and B & W, the parties arguing that amended section 1714.45 is unconstitutional. "The burden of demonstrating the constitutional infirmity of a statutory scheme is squarely upon the challenger." (Yoshioka v. Superior Court, supra, 58 Cal.App.4th at p. 983, fn. 2, 68 Cal.Rptr.2d 553; Anacker v. Sillas (1976) 65 Cal.App.3d 416, 423, 135 Cal. Rptr. 537.)
Any deficiency in the record, however, is of no moment. As instructed by In re Marriage of Buol, supra, 39 Cal.3d 751, 218 Cal.Rptr. 31, 705 P.2d 354, evidence of the extent or legitimacy of the tobacco industry's reliance on former section 1714.45 is unnecessary to our decision. "Where `retroactive application is necessary to subserve a sufficiently important state interest' [citation], the inquiry need proceed no further. [Citation.]" (Id. at p. 761, 218 Cal.Rptr. 31, 705 P.2d 354.) We conclude that application of amended section 1714.45 to causes of action that accrued on or after January 1, 1998 serves a sufficiently important state interest to constitute *839 a reasonable exercise of the Legislature's power to protect the health and welfare of the people of California.

DISPOSITION
The judgment of dismissal is reversed. The trial court shall enter a new order overruling the demurrers to the first, second, third, fourth, fifth and tenth causes of action of the complaint. The trial court shall also correct its records to reflect that no demurrer was filed as to the eighth and ninth causes of action, which remain pending against Philip Morris and B & W. The Souders are to recover their costs on appeal.
KLEIN, P.J., and ALDRICH, J., concur.
NOTES
[*] Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] All further statutory references are to the Civil Code unless otherwise indicated.
[2] A distinct but related question, whether amended section 1714.45 applies retroactively to causes of action accruing prior to the amendment's effective date, is presently pending before our Supreme Court in Naegele v. R.J. Reynolds Tobacco Co. (2000) 81 Cal. App.4th 503, 96 Cal.Rptr.2d 666, review granted October 18, 2000, S090420.
[3] The facts we recite are taken from the original complaint, which is the operative pleading before us. As we are required to do, we assume the truth of these allegations.
[4] Only Philip Morris and B & W were served with the complaint. None of the other defendants is a party to this appeal.
[5] Philip Morris and B & W have advised this court that the eighth and ninth causes of action, brought under Business and Professions Code section 17500, were erroneously included in their notice of demurrer and the parties' subsequent stipulation for dismissal. The question whether section 1714.45 applies to causes of action under Business and Professions Code section 17500 was not addressed either in the trial court or by the parties on this appeal. As requested by Philip Morris and B & W, the eighth and ninth causes of action are remanded to the trial court for further proceedings.
[6] The comprehensive 1987 tort reform legislation is sometimes referred to as the "napkin deal." (See Assem. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Apr. 16, 1997.)
[7] Cronin v. J.B.E. Olson Corp., supra, 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153 held that a plaintiff need not show that the product that had caused his or her injuries was "unreasonably dangerous" so long as it was proved that the product was defective and proximately caused the injuries in reasonably foreseeable use. (Id. at pp. 133-134, 104 Cal.Rptr. 433, 501 P.2d 1153.)
[8] Subdivisions (d), (e) and (f) of the current iteration of section 1714.45 include several nonsubstantive language and punctuation changes made by the Legislature in 1998. (Stats. 1998, ch. 485, § 38.)
[9] As previously explained, although given an opportunity to amend their complaint to allege conduct by defendants post-dating the effective date of the 1997 amendment, the Souders declined to do so.
[10] In Richards the Supreme Court did not determine the "exact substantive scope" of the immunity conferred by former section 1714.45. (Richards v. Owens-Illinois, Inc., supra, 14 Cal.4th at p. 1003, fn. 8, 60 Cal. Rptr.2d 103, 928 P.2d 1181.)
[11] Civil Code section 3 does not limit the required declaration of retroactivity to the statutory language itself. (In re Marriage of Bouquet (1976) 16 Cal.3d 583, 587, fn. 4, 128 Cal.Rptr. 427, 546 P.2d 1371.)
[12] As we noted previously, the question whether amended section 1714.45 applies retroactively to causes of action accruing prior to the amendment's effective date is presently pending before our Supreme Court in Naegele v. R.J. Reynolds Tobacco Co., supra, 81 Cal. App.4th 503, 96 Cal.Rptr.2d 666, review granted October 18, 2000, S090420. We express no view on that issue.
[13] As originally enacted, former section 1714.45, subdivision (d) provided for public entity lawsuits without disturbing the grant of immunity against lawsuits by private individuals. The subdivision thus provided simply that "the fact that the injured individual's claim against the defendant may be barred by this section shall not be a defense." (Stats. 1997, ch. 25, § 2.) When repealing the tobacco companies' immunity later in the same legislative session, subdivision (d) was renumbered as subdivision (e); and the language "may be barred by this section" was amended to read "may be barred by a prior version of this section." (Stats. 1997, ch. 570, § 1, subd. (e).)
[14] In its original form, this declaration of legislative intent was set forth as a new subdivision (d) to section 1714.45. (Sen. Bill No. 67 (1997-1998 Reg. Sess.) § 1, subd. (d) as amended Apr. 16, 1997.) Through the subsequent process of amendments to other portions of the bill, it became subdivision (f). (Sen. Bill No. 67 (1997-1998 Reg. Sess.) § 1, subd. (f) as amended Jun. 19, 1997.)
[15] The CMA's analysis of the need for the 1997 amendment was also included in the report prepared by the Senate Judiciary Committee. (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Feb. 14, 1997 [Appen. at p. 179].)
[16] American Tobacco Co. v. Superior Court, supra, 208 Cal.App.3d at p. 487, 255 Cal.Rptr. 280, described former section 1714.45 as providing "nearly complete" immunity, not total immunity from suit.
[17] We are mindful that identifying a right as "vested" or not often simply represents the conclusion rather than a helpful step in the analysis of the due process issues potentially raised by retroactive application of a statute. (See In re Marriage of Bouquet, supra, 16 Cal.3d at p. 592, fn. 9, 128 Cal.Rptr. 427, 546 P.2d 1371; Floumoy v. State of California (1964) 230 Cal.App.2d 520, 530-531, 41 Cal. Rptr. 190.)
[18] Dicta in Morris v. Pacific Electric Ry. Co. (1935) 2 Cal.2d 764, 768, 43 P.2d 276, indicate that retroactive elimination of an absolute, common law defense (contributory negligence) is subject to constitutional limitations. Because there was no legislative intent to apply the amendment at issue retroactively, however, the Supreme Court in Morris declined to do so, and thus did not reach any constitutional question. (Id. at pp. 768-769, 43 P.2d 276.) The retroactivity issue in Morris, moreover, involved possible application of a change in law. to a case then pending on appeal and primarily concerned the question whether eliminating a substantive defense could properly be characterized as "procedural." (Ibid.)
[19] "[T]he identification of public policy can be as much an interpretive as an evidentiary exercise." (Liebig v. Superior Court (1989) 209 Cal.App.3d 828, 834, 257 Cal.Rptr. 574.)
[20] In Richards v. Owens-Illinois, Inc., supra, 14 Cal.4th at p. 1002, 60 Cal.Rptr.2d 103, 928 P.2d 1181, the Supreme Court explained that former section 1714.45 represented a decision by the Legislature to "continue to honor the apparent public preference for retaining these [tobacco] products on the market, and for preserving a right of personal choice to enjoy them, despite their known risks. In this regard, the Legislature has determined, the mere manufacture and sale of such products create no tortious responsibility to individuals who voluntarily consumed them with the community's knowledge that they were unsafe." Contrary to the suggestion made by counsel for Philip Morris and B & W at oral argument, nothing in this description of legislative purpose establishes as a matter of law that tobacco manufacturers sold their products to the California market between 1987 and January 1, 1998 in reliance on the statutory bar to suit enacted by former section 1714.45.