[No. A041641. First Dist., Div. Two. Feb. 6, 1989.]

AMERICAN TOBACCO COMPANY et al., Petitioners, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY,
Respondent;
RUBY MAE STANTON et al., Real Parties in Interest.

Pillsbury, Madison & Sutro, George A. Sears, Gary H. Anderson, C. Douglas Floyd, Sedgwick, Detert, Moran & Arnold, Kevin J. Dunne, W. Bruce Wold, Michael F. Healy, Margaret L. Eaton, Coblentz, Cahen, McCabe & Breyer, Charles Breyer, Richard Patch, Cooper, White & Cooper, Charles W. Kenady, Lillick, McHose & Charles, John W. Ford, Thomas G. Scarvie, Randall S. Farrimond, Hoge, Fenton, Jones & Apel, Lewis L. Fenton, Larry E. Hayes, Rogers, Joseph, O'Donnel & Quinn, Joseph W. Rogers, Jr., Pamela Phillips, Thelen, Marrin, Johnson & Bridges, Frederic C. Nelson, Steven L. Hock, James C. Collins, Howard, Rice, Nemerovski, Canady, Robertson & Falk, Martin R. Glick, H. Joseph Escher III and Todd E. Thompson for Petitioners.

No appearance for Respondent.

George W. Kilbourne, Sanders, Dodson, Rives, McLaughlin & Pegnim and Bryce C. Anderson for Real Parties in Interest.

**KLINE, P. J.**—Petitioners, manufacturers of tobacco products, each of whom is a defendant in one or more of eleven lawsuits pending in respondent court, seek a writ of mandate and/or prohibition to compel the lower court to set aside its orders denying petitioners' motions for judgment on the pleadings in the actions filed by the real parties in interest. As we explain, petitioners are entitled to judgments on the pleadings; accordingly, we shall grant the petition.

## BACKGROUND

The real parties in interest (who, for the sake of simplicity, shall be referred to as plaintiffs) consist of individuals and the heirs of individuals who became ill, and in some cases died, allegedly as a result of being exposed to tobacco, asbestos and other toxic substances produced by petitioners and the other named defendants. Plaintiffs filed 11 separate lawsuits for damages for personal injuries and wrongful death; in each case the petitioners moved for judgment on the pleadings, asserting that Civil Code section 1714.45 immunized them from liability founded on use of their tobacco products.[1] The superior court denied the motions, reasoning that since petitioners refused to admit their products were "inherently unsafe" and had failed to produce evidence to that effect, they had not satisfied the conditions of section 1714.45. Petitioners requested this court to issue a stay and grant a writ of mandate and/or prohibition to compel the lower court to grant the judgment of the pleadings. We granted a stay pending our resolution of the petition.

## DISCUSSION

■ The sole question to be decided is whether section 1714.45 precludes the maintenance of plaintiffs' actions for damages due to injuries or death allegedly resulting from the use of petitioners' tobacco products.

Section 1714.45 provides in full: "(a) In a product liability action, a manufacturer or seller shall not be liable if:

"(1) The product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community; and

"(2) The product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, tobacco, and butter, as identified in comment i to Section 402A of the Restatement (Second) of Torts.

"(b) For purposes of this section, the term 'product liability action' means any action for injury or death caused by a product, except that the term does not include an action based on a manufacturing defect or breach of an express warranty.

"(c) This section is intended to be declarative of and does not alter or amend existing California law, including *Cronin* v. *J.B.E. Olson Corp.,*

---

[1] All statutory references are to the Civil Code.

(1972) 8 Cal.3d 121,[2] and shall apply to all product liability actions pending on, or commenced after, January 1, 1988."

Plaintiffs concede that cigarettes are "common consumer products" within the meaning of subdivision (a)(2). However, they argue, and three lower court judges agreed, that the use of the word "if" indicates the statute was intended to be conditional, so that the provision would not apply unless petitioners either stipulated or proved their products are "inherently unsafe" and are "known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community." They further maintain that "tobacco" and the four other products identified in subdivision (a)(2) are examples of "common consumer products," not of products that are "inherently unsafe" within the meaning of subdivision (a)(1), and that these five products are therefore not automatically immune. Finally, plaintiffs assert that petitioners' interpretation of the statute would result in a significant change in the law, contrary to the language of subdivision (c), which evidences the Legislature's intention to codify existing law without change.

In contrast, but with as much reason and force, petitioners maintain they need not prove their products satisfy subdivision (a)(1) because the inclusion of the word "tobacco" in subdivision (a)(2) is compelling evidence that the Legislature specifically intended tobacco products to be covered by this statute. As petitioners also point out, the legislative reference to "comment i to Section 402A of the Restatement (Second) of Torts," which pertains to immunity for certain "unreasonably dangerous" consumer products and identifies the same five products enumerated in section 1714.45, seems to confirm the intention to immunize manufacturers of these particular consumer products.

The words and structure employed by the Legislature convey no "plain meaning." On the contrary, this poorly drafted statute is on its face amenable to two diametrically opposed interpretations, each of which conflicts in some significant way with the words the Legislature used.

In discharging our responsibility to make sense of such antinomies we are compelled to impute to the statute that meaning which comports with the

---

[2]*Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121 [104 Cal.Rptr. 433, 501 P.2d 1153] held that a plaintiff need not show that the product which caused his or her injuries was "unreasonably dangerous," so long as it is proven that the product was defective and proximately caused the injuries. (8 Cal.3d at pp. 134-135.) The court reasoned that requiring plaintiffs to prove a product was unreasonably dangerous would create an additional burden that would undermine the purpose of strict liability expressed in *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049].

objective the Legislature sought to achieve. (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836], and cases there cited.) In determining what the Legislature intended we are bound to consider not only the words used, but also other matters, "such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy and contemporaneous construction. (*Estate of Jacobs* (1943) 61 Cal.App.2d 152, 155 [142 P.2d 454] . . . .)" (*Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110].) " 'It is a fundamental rule that a statute should be construed in the light of the history of the times and the conditions which prompted its enactment.' " (*People* v. *Fair* (1967) 254 Cal.App.2d 890, 893 [62 Cal.Rptr. 632].)

As indicated, the bare words of section 1714.45 are consistent with plaintiffs' position: The statute clearly states that a manufacturer or seller will not be liable *if* the product meets the conditions set forth in subdivisions (a)(1) and (a)(2). Subdivision (a)(2) states that the product must be a common consumer product intended for personal consumption "*such as* sugar, castor oil, alcohol, tobacco, and butter . . . ." (Italics added.) The placement of the italicized words suggests the list was only intended to provide examples of common consumer products, not products that are "inherently unsafe" and "known to be unsafe by the ordinary consumer" within the meaning of subdivision (a)(1). However, while the unadorned language and organization of the statute are consistent with plaintiffs' position, the legislative history of the statute and "the wider historical circumstances of its enactment," which "are legitimate and valuable aids in divining the statutory purpose" (*California Mfrs. Assn.* v. *Public Utilities Com., supra,* 24 Cal.3d at p. 844; *People* v. *Black* (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104]) persuade us that the Legislature intended to create the automatic immunity petitioners assert.

Documentary and other evidence produced by petitioners convincingly shows that section 1714.45 was one of the results of a compromise between parties seeking and opposing comprehensive changes in California tort law who had been locked in a long political struggle that had reached stalemate. Shortly before the statute was enacted, representatives of the Association of California Insurance Companies, the Association for California Tort Reform, the California Medical Association, the California Trial Lawyers Association (CTLA) and the California Chamber of Commerce all agreed to a five-year moratorium on initiating, sponsoring or supporting legislation or initiatives on tort reform, insurance regulation or modification of the Medical Injury Compensation Reform Act of 1975. (Stats. 1975, 2d Ex. Sess., ch. 1, p. 3949.)

██ ██ It was commonly understood that the measure embodying section 1714.45, which enjoyed the active or at least tacit support of all these groups, would provide nearly complete immunity for manufacturers of the five enumerated products. For example, in a letter to CTLA members, the president of that organization explained that: ". . . [e]ach of [the enumerated products] is voluntarily and physically consumed by the individual routinely despite the known inherent dangers.

"Since the dangers cannot be further reduced, minimized or alleviated without removing the product from the market, product liability suits would only require or cause their removal. The policy decision has already been made by society in favor of their availability.

". . . . . . . . . . . . . . . . . . . . . .

"[*I*]*t was intended and understood that the immunity would apply to the five products identified*." (Italics added.)

A memorandum prepared for the Assembly Republican Caucus explained that under the new legislation "high-cholesterol foods, alcohol, and cigarettes that are inherently unsafe and known to be unsafe by ordinary consumers, are not to be subject to product liability lawsuits." Finally, the record includes numerous contemporaneous news accounts of the legislation uniformly reporting that the statute resulted from a "peace pact" among some of California's major special interest groups and would provide immunity for manufacturers of the five products named in section 1714.45.

The foregoing evidence very strongly indicates that the Legislature intended to immunize manufacturers of sugar, castor oil, alcohol, tobacco and butter from product liability suits.

Though the materials we employ to discern this intent are not the sort courts frequently rely upon, we are constrained to do so by necessity. The statute, which seems almost calculated to defy exegesis, was enacted swiftly and unexpectedly late in the legislative session, thereby leaving us without many of the extrinsic indications of legislative purpose often provided by the legislative process.[3] Furthermore, though plaintiffs dispute the intent we

---

[3] The measure that produced section 1714.45, Senate Bill No. 241, was on January 26, 1987, introduced by its author, Senator Lockyer, for the purpose of extending the provisions of Code of Civil Procedure section 411.30 (repealed by its own terms on Jan. 1, 1989), which required a certificate of merit in medical malpractice actions. On September 4, 1987, after the bill passed both houses of the state Legislature with only one minor amendment, it was abruptly returned to the Assembly. (Sen. Semifinal Hist. (1987-1988 Reg. Sess.) Feb. 4, 1988, p. 107.) Seven days later, on September 11, the measure was completely gutted and entirely new provisions were inserted, known as the "Willie L. Brown, Jr.-Bill Lockyer Civil Liability

ascribe to the Legislature, they do not present us with any historical evidence of a different intent. ■ Finally, legislative staff analyses of a measure may be used to discover legislative intent where, as is true of the staff memorandum we rely upon, the analysis is in accord with a reasonable interpretation of the enactment. (*Southern Cal. Gas Co.* v. *Public Utilities Com.* (1979) 24 Cal.3d 653, 659 [156 Cal.Rptr. 733, 596 P.2d 1149].) Resort to such a staff analysis is most appropriate in a case such as this, where, so far as the court is aware, it is the only legislative document available that sheds light on the meaning of the statute. (See *White* v. *Davis* (1975) 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 533 P.2d 222].) ■ Though the statement of a representative of a special interest group, such as CTLA, is ordinarily an unreliable indication of the purpose of legislation affecting the interests of that group, this is not so where, as here, the statement concedes a purpose inimical to the goals of the interest group.

■ The reference in subdivision (a)(2) to the Restatement of Torts also supports petitioners' interpretation of the statute. Section 402A of the Restatement pertains to the strict liability of one who sells "any product in a defective condition unreasonably dangerous to the user or consumer . . . ." Comment i explains that "unreasonably dangerous" applies only where there is a defective condition and does not describe products—like "sugar," "castor oil," "whiskey," "tobacco" and "butter"—that "cannot possibly be made entirely safe for all consumption, and . . . necessarily involve[ ] some risk of harm, if only from over-consumption." The reference to this language and these same products in section 1714.45 would be entirely inappropriate if the legislative intendment was not to exclude the enumerated items from product liability on a rationale analogous to that discussed in comment i to section 402A of the Restatement. Moreover, the reference to the Restatement would not only have been inappropriate but wholly unnecessary if the five products were identified merely to provide examples of "common consumer product[s] intended for personal consumption," as plaintiffs contend. Adoption of plaintiffs' position would thus violate the general rule that "[i]nterpretative constructions which render some words surplusage . . . are to be avoided." (*California Mfrs. Assn.* v. *Public Utilities Com., supra,* 24 Cal.3d at p. 844.)

---

Reform Act of 1987." The new version of the bill, which was never the subject of committee hearings, was passed by both houses of the Legislature on that very same day. (*Ibid.*) Reports on the revised bill that were quickly prepared by the Committees on Judiciary of the Senate and Assembly simply reiterated the product liability provisions now set forth in section 1714.45 without disclosing any specific legislative purpose, except that the report of the Senate committee concluded that: "The purpose of this bill is to enact a compromise agreement on procedural and substantive civil liability reforms which has been reached between competing interests such as the plaintiffs' trial lawyers, insurers, doctors, and manufacturing and business groups."

■ Plaintiffs' most troublesome argument is that petitioners' claims of immunity are inconsistent with subdivision (c) of the statute, which states that section 1714.45 "is intended to be declarative of and does not alter or amend existing California law." As plaintiffs correctly point out, if the language of subdivision (c) is assigned the literal meaning conventionally attached to those words subdivision (c) would conflict with subdivision (a), which creates an immunity that cannot be conferred without altering or amending existing California law.[4]

■ The judicial responsibility is to harmonize provisions of a single statute that are seemingly in conflict to the extent possible and to avoid an interpretation that would render the statute meaningless. (*Orpustan* v. *State Farm Mut. Auto. Ins. Co.* (1972) 7 Cal.3d 988, 994 [103 Cal.Rptr. 919, 500 P.2d 1119] [courts have "no right to . . . emasculate [a statute's] application under the guise of judicial interpretation"].)

■ The only way to eliminate the apparent conflict between subdivisions (a) and (c) and effectuate what extrinsic evidence clearly shows to have been the legislative purpose is to read subdivision (c) as expressing an intention not to alter or amend existing statutory or common law *except as specifically provided in section 1714.45*. Thus, the reference to *Cronin* v. *J.B.E. Olson Corp., supra,* 8 Cal.3d 121 eliminated doubt, if there was any, that the new statute left untouched the rule, reaffirmed in *Cronin,* that a plaintiff in a products liability case seeking recovery upon the theory of strict liability need not establish that the defect in the product that caused his injuries made the product unreasonably dangerous. Read in this manner, subdivision (c) does not conflict with an interpretation of the entire statute as providing automatic immunity for manufacturers of the enumerated consumer products. ■ ■ ■ ■ ■ ■ We reject the different interpretation of subdivision (c) advanced by plaintiffs because it would render subdivision (a) meaningless and defeat the apparent purpose of section 1714.45.[5]

---

[4]Under the law existing prior to the enactment of section 1714.45 cigarette manufacturers could be held liable for damages resulting from the use of cigarettes if the plaintiff proved that a defect in the cigarette's manufacture or design proximately caused their injury. (*Cronin* v. *J.B.E. Olson Corp., supra,* at p. 133.) A defect could be shown by evidence that (a) the product "failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner" (*Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 426-427 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1]); or (b) the product's design embodied " 'excessive preventable danger.' " (*Id.,* at p. 430.)

[5]For this reason we also reject plaintiffs' claims that (1) the Legislature's use of the word "tobacco" does not include processed tobacco products, such as cigarettes; (2) consumers cannot fully appreciate the risks involved in cigarette smoking because tobacco companies will not reveal all the additives in cigarettes; and (3) these plaintiffs' actions should not be

The literal reading of the statute urged by plaintiffs would significantly undermine the discernible legislative intendment. ■ We are constrained to "interpret legislation reasonably and . . . attempt to give effect to the apparent purpose of the statute." (*Zidell* v. *Bright* (1968) 264 Cal.App.2d 867, 869 [71 Cal.Rptr. 111].) ■ ■ ■ The lower court is hereby ordered to vacate its previous orders denying petitioners' motions for judgment on the pleadings and to grant those motions.[6] The stay heretofore imposed is lifted. Petitioners' application for costs is denied (Code Civ. Proc., § 1027; Cal. Rules of Court, rule 26); all parties shall bear their own costs.

Smith, J., and Benson, J., concurred.

A petition for a rehearing was denied March 8, 1989, and the petition of real parties in interest for review by the Supreme Court was denied May 25, 1989. Mosk, J., and Eagleson, J., were of the opinion that the petition should be granted.

---

barred because their injuries were caused by the synergistic effect of tobacco and asbestos, which they were unaware of.

First, it would be absurd to interpret "tobacco" as applying only to unprocessed tobacco leaves, since the product is not consumed in that form. The Legislature could not have intended to limit the statute to pure tobacco any more than it intended "alcohol" to apply only to pure alcohol and not to beer, wine and other liquors, which are the forms in which alcohol commonly is consumed.

As to the second and third claims, there is no requirement under this statute that consumers fully appreciate *all* the risks involved in the use or consumption of the products within the purview of this section. In order to be covered by this statute it is sufficient that the ordinary consumer knows the product is "unsafe." Evidence that the risks are greater than those anticipated, either because the product contains unknown dangerous elements or because it may be used in conjunction with substances that unknowingly increase the risks involved, could possibly be used to support a claim that the product is defective under the standards outlined in *Barker* v. *Lull Engineering Co., supra,* 20 Cal.3d 413 (see Discussion, *ante,* at fn. 4, p. 489).)

[6] In their petition for rehearing filed with this court, plaintiffs assert for the first time that they were improperly denied an opportunity to amend their complaints to allege that (1) Civil Code section 1714.45 was not passed in the manner required by the state Constitution; and (2) the retroactive provisions of the legislation violated their state and federal due process and equal protection rights. These issues, which were never presented below or in connection with this appeal, cannot be raised for the first time in a petition for rehearing. (9 Witkin, Cal. Procedure (3d ed. 1985) § 684, p. 656.)