113 Cal.Rptr.2d 494 (2002)
93 Cal.App.4th 824
Patricia HENLEY, Plaintiff and Respondent,
v.
PHILIP MORRIS INC., Defendant and Appellant.
No. A086991.
Court of Appeal, First District, Division Four.
November 7, 2001.
Review Granted January 29, 2002.
*495 Gerald V. Barron, Lucy E. Mason, Shook, Hardy & Bacon L.L.P., San Francisco, M. Laurence Popofsky, Curtis M. Caton, David B. Goodwin, San Francisco, *496 Wayne Stephen Braveman, Heller, Ehrman, White & McAuliffe, Los Angeles, for Appellant.
Daniel Upham Smith, Los Angeles, Ted W. Pelletier, Law Offices of Daniel U. Smith, Harry F. Wartnick, Madelyn Joyce Chaber, Wartnick, Chaber, Harowitz, Smith & Tigerman, Concord, for Respondent.
Certified for Partial Publication.[*]
SEPULVEDA, J.
Plaintiff brought this action for personal injuries allegedly sustained as a result of defendant's tortious misconduct in the manufacture and marketing of cigarettes. The jury returned a special verdict awarding plaintiff $1.5 million in compensatory damages and $50 million in punitive damages. The trial court denied defendant's motions for new trial and judgment notwithstanding the verdict, except that it ordered a new trial on punitive damages unless plaintiff consented to reduce the punitive award to $25 million. Plaintiff consented to the reduction, and defendant filed a timely appeal.
Defendant raises a host of objections, many not preserved for appeal. Its primary contentions are that (1) all of plaintiffs claims are barred by the immunity conferred on tobacco manufacturers from 1988 to 1998 by former Civil Code section 1714.45 (section 1714.45);[1] (2) the jury was misinstructed on the limitations imposed on plaintiffs claims by the Public Health Cigarette Smoking Act of 1969, title 15 United States Code section 1331 et seq. (the 1969 Act); (3) each of plaintiffs claims is deficient in various particulars; and (4) the punitive damage award cannot be sustained. We find no prejudicial error, and affirm the judgment.

INTRODUCTION AND BACKGROUND
We begin with a fundamental principle persistently overlooked by defendant: "A judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 349, p. 394.) Thus in ascertaining the underlying facts for purposes of appellate analysis, the reviewing court "must consider the evidence in the light most favorable to the prevailing party, giving him the benefit of every reasonable inference, and resolving conflicts in support of the judgment." (Id. § 359, p. 408, italics in original.)
Viewed most favorably to the judgment, the evidence shows that plaintiff, who was born in 1946, began smoking cigarettes in 1961 or 1962, at the age of 15, when she "lit up" with some school friends outside a dance. At that time she felt smoking was "cool" and "grown up," provided the pleasure of the forbidden, made her look older, and served as a "rite of passage." Then and for some years thereafter, nobody told her that cigarettes could cause her serious disease. There were no warnings on cigarette packages or in advertisements. Plaintiff was not taught in school about the dangers of tobacco. As a result she believed that cigarettes, which contained "[t]obacco, pure and simple," were "not a harmful product." Nor did she know that cigarettes or nicotine could be addicting. Nothing in the advertising she saw suggested *497 that if she started smoking she might be unable to stop.
The jury could also find that starting no later than December 1953, defendant and other cigarette manufacturers agreed to act together to counter mounting scientific evidence about the health risks of cigarette smoking. By the time plaintiff began smoking, defendant knew that tobacco contained numerous carcinogenic substances as well as flavoring additives that also produced carcinogenic compounds upon combustion. Tobacco manufacturers were also aware of epidemiological studies that showed a strong correlation between smoking and the incidence of lung cancer. Yet they launched a concerted public relations campaign to deny any link between smoking and serious illness. A major part of this strategy was the creation of a "research institute" that would, as the public was told, attempt to find the truth about smoking and healththough in fact it was permitted to conduct very little research that might confirm a link, serving mainly, as the jury was entitled to find, to gather ammunition against tobacco's detractors. Other strategies included manipulating the mass media to suppress or make light of adverse news developments, such as new studies or reports.
The jury could also find that defendant engaged in saturation advertising, much of it consciously targeting the teenage audience from which new ("replacement") smokers had to come. Defendant knew that persons who did not begin smoking during their teen years were unlikely to do so. In particular, defendant sold the brand of cigarette plaintiff preferred, Marlboro, using symbols of the independence, autonomy, and mature strength for which teenagers were understood to yearn. The jury could find that these targeted teenage consumers possessed less critical judgment, and were more receptive to marketing manipulation generally, than might be the case with adults. The jury could find that teenagers who went past the experimentation phase became addicted to tobacco, as a result of which they found it extremely difficult to stop smoking and often suffered impaired judgment with respect to the consequences of continuing to do so.[2] The jury could find that the strategy of marketing to teenagers and causing them to become addicted to its products was central to the tremendous success and profitability of the Marlboro brand in particular, helping defendant to become one of the largest and most successful corporations in the world.
In 1966, as evidence of health risks mounted, Congress required that cigarette packages bear the relatively mild warning that smoking "may be hazardous." In the 1969 Act, Congress required a somewhat stronger warning and required that it appear in advertising as well as on packages. At the same time, Congress explicitly preempted any state law imposing a "requirement or prohibition with respect to advertising or promotion" of cigarettes language that has since been construed to preempt many but not all common-law tort claims. Although the warnings have since been further strengthened, this partial federal immunity remains in place, and is one of defendant's major defenses here. (See section II, below.)
In 1988 the tobacco industry acquired a safe harbor under California law when, riding the coattails of a legislative compromise, tobacco was listed among "common *498 consumer products" in former section 1714.45, a statute construed the following year to create an almost complete "immunity" from tort liability. The Legislature repealed that protection effective January 1, 1998, but defendant contends that it nonetheless applies to defeat most or all of plaintiffs claims here. (See section I, below.)
The jury was entitled to find that well before these legislative defenses became applicable, plaintiff had become an addicted smoker with sharply impaired judgment and will where cigarettes were concerned. Plaintiff testified that on the subject of cigarette smoking and health, "my brain wasn't going to register anything that anybody said." When she saw the first package warnings, she minimized the perceived "degree[ ] of danger," thinking to herself that it was also "dangerous to walk across the street." She testified that while she heard the United States Surgeon General was saying things about cigarettes, she also knew "that the tobacco companies were saying different." As a result, the package warning "didn't faze me one way or the other. I wasn't going to give the cigarettes up at that point."
Plaintiffs first regular brand of cigarettes was Marlboro, and it remained her favorite brand throughout almost all of her 35 year smoking history. From age fifteen until she was about 43 years old (around 1989), she apparently smoked one-and-a-half to two packs a day of "Marlboro Red," a brand rated to deliver relatively high amounts of tar and nicotine. At that age, however, she switched to Marlboro Lights, a lower-tar brand, on what the jury was entitled to view as the direct advice of a Philip Morris agent. Plaintiff testified that around that time she began to hear that "low-tar cigarettes were better. You wouldn't get as much tar and nicotine and, you know, their advertising on the low-tar cigarettes was really out there, [¶] I'm thinking, `Well, okay. Maybe there's something to this.' So when I was approximately 43, I decided that, `Well, I'll check into this and maybe I'll change from the Reds to the Lights.' [¶] So I did indeed call the Marlboro, Philip Morris company and expressed, you know, my concerns as to, `Is it really true? Is there less tar in this or less nicotine?' [¶] And I was assured at the time that if I was concerned that, yes, I could switch to the Lights...." She did so and, in a few weeks, had more or less doubled her intake, to three-and-a-half packs a day.
By mid-October 1997 plaintiff "was feeling really bad" and "down for the count with what I thought was heavy-duty flu." She was diagnosed in February 1998 with small-cell carcinoma of the lung. The jury was more than entitled to find that this affliction was directly caused by cigarette smoking.

ANALYSIS

I.

Immunity Under Former Section 1714.45[3]

A. Nature of Error, Standard of Review.
Defendant contends that the trial court erred by "refus[ing] to apply" the immunity *499 granted to tobacco manufacturers prior to 1998 by former section 1714.45. This is not an adequate specification of error. (See 9 Witkin, Cal. Procedure, supra, Appeal, § 340, p. 382 [court reviews trial court's actions, not reasoning]; Pittman v. Boiven (1967) 249 Cal.App.2d 207, 215, 57 Cal.Rptr. 319 ["It is the duty of counsel to refer the reviewing court to the portion of the record to which he objects and to show that the appellant was prejudiced thereby."]; Brown v. World Church (1969) 272 Cal.App.2d 684, 691, 77 Cal.Rptr. 669 ["it is not the burden of this court to act as counsel for either party and we will not assume the task of making a search for error"]; Troensegaard v. Silvercrest Industries, Inc. (1985) 175 Cal.App.3d 218, 229, 220 Cal.Rptr. 712 [refusing to consider claims of attorney misconduct unaccompanied by record references].) However, defendant elsewhere notes that the trial court denied a motion for nonsuit based on former section 1714.45. This is a specific and reviewable ruling. Other matters to which defendant alludes in this regard are not, for various reasons, cognizable grounds for reversal.[4]
Defendant was entitled to nonsuit if "as a matter of law, the evidence presented by plaintiff [was] insufficient to permit a jury to find in [her] favor." (Nally v. Grace Community Church (1988) 47 Gal.3d 278, 291, 253 Cal.Rptr. 97, 763 P.2d 948.) Since this is an issue of law, we review it de novo, employing the same standard as the trial court. (Saunders v. Taylor (1996) 42 Cal.App.4th 1538, 1541-1542, 50 Cal. Rptr.2d 395.) For present purposes it is not seriously disputed that the evidence was sufficient to support findings that plaintiff started smoking cigarettes in the early 1960s and continued to do so until late 1997, as a result of which she contracted lung cancer. Although defendant makes a half-hearted attempt to cast the point in doubt, we infer in support of the judgment that plaintiff did not and could not reasonably discover her cancer before early 1998, when she was diagnosed with that illness and told that it resulted from cigarette smoking. The question thus presented is whether former section 1714.45 precluded the imposition of liability on defendant for plaintiffs injuries as a matter of law. We hold that it did not.

B. Former Section 1714.45.
Defendant relies on former section 1714.45 as in effect from January 1, 1988, *500 to January 1, 1998. At that time the statute provided that a manufacturer or seller could not be liable in a "product liability action" for injuries caused by a product if the product was "inherently unsafe," was "known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community," and was "a common consumer product intended for personal consumption, such as ... tobacco...." (Former section 1714.45, subd. (a); Stats. 1987, ch. 1498, § 3, pp. 5778-5779.) "[P]roduct liability action" was defined as "any action for injury or death caused by a product, except ... an action based on a manufacturing defect or breach of an express warranty." (Id., subd. (b).)
In 1989 Division Two of this court described former section 1714.45 as a "poorly drafted statute" that failed to convey a single "`plain meaning'" but, "[o]n the contrary," was "on its face amenable to two diametrically opposed interpretations, each of which conflicts in some significant way with the words the Legislature used." (American Tobacco Co. v. Superior Court (1989) 208 Cal.App.3d 480, 485, 255 Cal. Rptr. 280 (American Tobacco).) The court nonetheless concluded that the statute created an "immunity" for manufacturers of the enumerated products that was both "automatic" (id. at p. 486, 255 Cal. Rptr. 280) and "nearly complete" (id. at p. 487, 255 Cal.Rptr. 280). The breadth of this reading may have been cast in some question by Richards v. Owens-Illinois, Inc. (1997) 14 Cal.4th 985, 60 Cal.Rptr.2d 103, 928 P.2d 1181, which held that in an action for damages resulting from lung disease, an asbestos manufacturer could not reduce its own "comparative responsibility" under Proposition 51 (Civ.Code, § 1431 et seq.) by seeking to attribute a share of responsibility to an absent tobacco company. The court confirmed that former section 1714.45 "immunized" tobacco suppliers. (Id. at pp. 1000, 1001, 1003, fn. 8, 60 Cal.Rptr.2d 103, 928 P.2d 1181.) At the same time, the court seemed to reserve judgment on the scope and extent of the immunity provided. (Id. at pp. 999, 1003, fn. 8, 60 Cal.Rptr.2d 103, 928 P.2d 1181.)
The year after Richards was decided the Legislature itself undertook to amend former section 1714.45 as it affected tobacco products. From these efforts emerged two statutes. The first added a subdivision (d) to the former statute declaring that it posed no impediment to actions by public entities to recoup the cost of benefits provided to persons injured by tobacco products. (Stats.1997, ch. 25, § 2, p. 230.) We are more concerned with the second amendment, Senate Bill No. 67, ultimately chaptered as Statutes 1997, Chapter 570 (SB 67). Because it was not an urgency measure, it took effect on January 1, 1998. (See Gov.Code, § 9600, subd. (a).) It made the following changes to former section 1714.45:(1) deleted tobacco from the list of products in subdivision (a); (2) inserted a new subdivision (b), stating that the statute did not "exempt the manufacture or sale of tobacco products by tobacco manufacturers and their successors in interest from product liability actions"; (3) modified and renumbered (as subdivision (e)) subdivision (d), which had just been added as noted above; (4) inserted a new subdivision (f) declaring a legislative intention to abolish any "statutory bar" to claims by persons "who have suffered or incurred injuries" and to ensure that "claims that were or are brought" would be "determined on their merits"; and (5) inserted a new subdivision (g) declaring section 1714.45 inapplicable to "tobacco industry research organization[s]." (§ 1714.45.) Accompanying the amendment *501 was a further uncodified declaration of legislative intent. (Stats.1997, ch. 570, § 2.)
SB 67 thus effected a repeal of section 1714.45 insofar as it had conferred an immunity on tobacco manufacturers, their successors, and tobacco industry research organizations. The term "repeal" appears in the one-sentence "summary" or "digest" in nearly all of the committee and floor reports. (E.g., Sen. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Feb. 14, 1997 ["This bill would repeal the current immunity conferred upon manufacturers and sellers of tobacco products, as specified in Civil Code Section 1714.45, for products liability."].)

C. Effect of Statute.

1. Express Terms.
The question presented, then, is whether the 1998 repeal of the immunity formerly granted to tobacco manufacturers by former section 1714.45 applies to permit plaintiffs suit. Innumerable authorities acknowledge a general "`presumption'" against giving retroactive effect to statutory changes (e.g., Buttram v. Owens-Corning Fiberglas Corp. (1997) 16 Cal.4th 520, 536, fn. 6, 66 Cal.Rptr.2d 438, 941 P.2d 71, quoting Landgraf v. USI Film Products (1994) 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229), but beyond that the jurisprudence of statutory retroactivity is a dense conceptual jungle. We have elected to more or less follow the analytical approach taken in Landgraf supra, 511 U.S. at p. 280, 114 S.Ct. 1483. In that approach, the first task is to determine whether the enacting body "has expressly prescribed the statute's proper reach." (Ibid.) If it has, there is no occasion to resort to "judicial default rules." (Ibid.; see Western Security Bank v. Superior Court (1997) 15 Cal.4th 232, 243, 62 Cal. Rptr.2d 243, 933 P.2d 507 ["when the Legislature clearly intends a statute to operate retrospectively, we are obliged to carry out that intent unless due process considerations prevent us"].) Only if the statute lacks an express directive must the court attempt to determine "whether the new statute would have retroactive effect" for purposes of the judicial presumption. (Landgraf, supra, 511 U.S. at p. 280, 114 S.Ct. 1483) In short, we need not decide whether application of the change to a particular state of facts would be "retroactive" if the statute plainly calls for such application.
We have concluded that the statute here expressly calls for application to the present case. Subdivision (f) of section 1714.45 (subdivision (f)) states, "It is the intention of the Legislature in enacting the amendments to subdivisions (a) and (b) of this section adopted at the 1997-98 Regular Session to declare that there exists no statutory bar to tobacco-related personal injury, wrongful death, or other tort claims against tobacco manufacturers and their successors in interest by California smokers or others who have suffered or incurred injuries, damages, or costs arising from the promotion, marketing, sale, or consumption of tobacco products. It is also the intention of the Legislature to clarify that those claims that were or are brought shall be determined on their merits, without the imposition of any claim of statutory bar or categorical defense." (Italics added.)
Three portions of this declaration expressly prescribe a retroactive effect. The first extends the abolition of the prior immunity to persons who "have suffered or incurred" damages from tobacco products. A statute "`speaks from the date it takes effect.'" (Hersh v. State Bar (1972) 7 Cal.3d 241, 245, 101 Cal.Rptr. 833, 496 P.2d 1201, quoting People v. Righthouse (1937) 10 Cal.2d 86, 72 P.2d 867; see *502 Righthouse, supra, at p. 88, 72 P.2d 867 ["every statute speaks as though the Legislature was in session on the day when the act takes effect and passed it on that day"].) The statute thus must be understood as a statement by the Legislature, speaking on January 1, 1998, that persons who "ha[d] suffered" damages from tobacco products, as of that date, were not to be impeded in the assertion of claims by the immunity formerly afforded to tobacco manufacturers. As a matter of common sense, the words chosen could hardly mean anything else, and as a matter of grammar, they do not. The quoted phrase uses what is usually referred to as the "present perfect" tense. It refers to an event beginning in the past and either completed in the past or continuing into the present. The event here describedthe suffering of an injurynecessarily contemplates antecedent injury-producing conduct by the defendant. The quoted phrase thus constitutes an explicit extension of the repeal to at least some injuries and conduct preceding its enactment.
The statute next declares an intent that "those claims that were or are brought shall be determined on their merits, without the imposition of any claim of statutory bar or categorical defense." This wording, using the simple past tense, is unusual, but that does not deprive it of effect. The statute speaks as of its effective date, and a reference on January 1, 1998, to claims that "were brought" can only mean claims brought prior to that date. We conceive no interpretation of this language, and defendant suggests none, which gives it any other meaning. It thus reiterates and reinforces the legislative intention to extend the repeal of immunity to at least some past claims-not only claims based on past events and conduct, but also claims "brought" before the effective date.
Further textual evidence of retroactive intent appears in the statement that the Legislature intends to "clarify" that the described claims will be decided on their merits without regard to the former statutory bar. Here "clarify" is a term of art presumably intended to invoke the rule that "a statute that merely clarifies, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment." (Western Security Bank v. Superior Court, supra, 15 Cal.4th 232 at p. 243, 62 Cal.Rptr.2d 243, 933 P.2d 507, italics omitted.) Of course a flat repeal of a prior statute is not in fact a mere "clarification"; by definition it changes the law. The Legislature's characterization of such a change as a "clarification" is not binding on us. (Id. at p. 244, 62 Cal.Rptr.2d 243, 933 P.2d 507.) Nonetheless it is textual evidence that "may still effectively reflect the Legislature's purpose to achieve a retrospective change." (Ibid.)
Relying on Colfield v. American Tobacco Company (E.D.Cal. Aug. 6, 1999, Civ S-98-1695 DFL DAD)an unpublished memorandum of opinion from a federal trial courtdefendant makes a series of arguments against reading subdivision (f) as expressly disclosing retroactive intent.[5] Defendant notes that the statute *503 lacks a retroactivity clause as explicit as those found in other statutes. The short answer to this is that California law does not require the most explicit possible clause. The question is whether the Legislature has disclosed by "`express language or clear and unavoidable implication' " an intent to apply the statute to prior events. (Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 1208, 246 Cal.Rptr. 629, 753 P.2d 585.) We have answered that question in the affirmative. That the Legislature could have made its intentions clearer does not mean it failed to make them clear enough.
Quoting the unpublished Colfield decision, defendant asserts that subdivision (f) "`seems to take a later perspective in time, after January 1, 1998, when it could accurately be said that "there exists no statutory bar ... to tobacco-related tort claims."'" (Ellipsis defendant's.) To the same effect is the suggestion that subdivision (f) might be "`read from the perspective of future courts, to whom the Legislature is providing interpretive advice.'" These statements are devoid of logical force because they are couched in terms of mere apparency or possibility, as if it were unnecessary to say what the statute actually means. Insofar as they assert anything, it is that the verbs in subdivision (f) speak from some future time. We discern no basis for this hypothesis, which flatly contradicts the principle that a statute speaks as of the time of its enactment. (Hersh v. State Bar, supra, 7 Cal.3d at p. 245, 101 Cal.Rptr. 833, 496 P.2d 1201.) The quoted rumination to the contrary seems to reflect nothing more than an unwillingness to give the Legislature's words their apparent meaning.
We are likewise unpersuaded by the statement that "`[a]n unexplained shift in verb tense is too slender a reed on which to base such a significant departure from normal legislative practice.'" In addition to the reasons already stated, to disregard statutory language as insignificant violates the canon that "whenever possible, significance must be given to every word in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage." (Agnew v. State Bd. of Equalization (1999) 21 Cal.4th 310, 330, 87 Cal.Rptr.2d 423, 981 P.2d 52.) We are not free to adopt an argument that simply dismisses statutory language as "unexplained" or "too slender."
Somewhat more plausibly, defendant contends that an intent to apply the 1998 legislative changes to past conduct, injuries, or claims, is incompatible with that portion of subdivision (e) of section 1714.45 (subdivision (e)) stating that, in any recoupment action brought by a public entity, "the fact that the injured individual's claim against the defendant may be barred by a prior version of this section shall not be a defense." (Italics added.) According to defendant, the italicized language is an explicit acknowledgement that as of the effective date of the statute, and thereafter, prior versions of the statute could continue to bar claims. Defendant also suggests that the quoted language would be superfluous if the 1998 amendments effected a complete retroactive repeal of the prior immunity.
Defendant thus obliquely invokes two rules of construction. The first, which we *504 have already noted, counsels against a construction that will render parts of a statute superfluous. (Agnew v. State Bd. of Equalization, supra, 21 Cal.4th at p. 330, 87 Cal.Rptr.2d 423, 981 P.2d 52.) Defendant seems to imply that if the Legislature intended to retroactively lift the former immunity as it affected individual claims, it would not bother to prescribe a rule for cases in which individual claims might be subject to the immunity. Second, defendant may be understood to suggest that, for similar reasons, subdivision (e) actually conflicts with subdivision (f) insofar as the latter is construed to make the repeal retroactive; implicit in this suggestion is the further proposition that the conflict should be resolved in favor of subdivision (e).
The indirectness of this argument may stem from the difficulty of asserting it more cogently without exposing its fatal weakness. In a sentence, the cited language from subdivision (e) does no more than acknowledge the possibility that some claims "may" be "barred by a prior version of this section." There is no logical conflict between such a statement and an expression of legislative intent that claims not be barred. Even if the two provisions appeared to be in tension with each other, such tension would not provide a sufficient basis to simply ignore one of them. "It is fundamental that legislation should be construed so as to harmonize its various elements without doing violence to its language or spirit." (Wells v. Marina City Properties, Inc. (1981) 29 Cal.3d 781, 788, 176 Cal.Rptr. 104, 632 P.2d 217; People v. Garcia (1999) 21 Cal.4th 1, 6, 87 Cal.Rptr.2d 114, 980 P.2d 829.) Thus if a statute contains two potentially conflicting terms, a court will attempt to avoid an interpretation that requires it to disregard one of them "or to rewrite some of their provisions." (People v. Garcia, supra, 21 Cal.4th at p. 6, 87 Cal.Rptr.2d 114, 980 P.2d 829.) Such a neutralizing construction, or "reformation," may be undertaken if "compelled by necessity and supported by firm evidence of the drafters' true intent." (Ibid.) It should be avoided, however, "when the statute is reasonably susceptible to an interpretation that harmonizes all its parts without disregarding or altering any of them." (Ibid.)
Here the cited provision of subdivision (e) is readily harmonized with the retroactive repeal of the statutory immunity, at least as applicable to this case. It can be read as a reflection of legislative uncertainty about the future judicial treatment of the repeal. In Landgraf supra, 511 U.S. at p. 261, 114 S.Ct. 1483, the court rejected an argument that language specifying the prospective effect of some parts of a statute would be superfluous if other parts were not applied retroactively. The court said that the specification of prospectivity was explained by, among other things, "Congressional doubt concerning judicial retroactivity doctrine." (Ibid.) Here, the Legislature was not required to gamble that courts would retroactively apply the repeal of tobacco immunity to any and all individual claims. The Legislature was entitled to anticipate that courts might hold some claims barred, and to act on that possibility by declaring that it had no effect on recoupment claims by public entities.
Defendant makes no attempt to harmonize or reconcile subdivisions (e) and (f) but would simply rewrite the latter to remove any reference to past claims. But defendant makes no attempt to show, and we see no basis to conclude, that such a treatment is "compelled by necessity" or "supported by firm evidence of the drafters' true intent." (People v. Garcia, supra, 21 Cal.4th at p. 6, 87 Cal.Rptr.2d 114, 980 P.2d 829.) As we have explained, the supposedly conflicting provisions can be reconciled *505 by positing legislative uncertainty over the extent to which courts would carry out the expressed intent that the statute apply to events and claims predating its effective date. The provisions of subdivision (e) therefore afford no occasion to disregard those expressions of intent.
We conclude that the 1998 amendments to section 1714.45 manifest on their face a legislative intent that the repeal of the immunity originally conferred on tobacco companies be effective with respect to claims involving events antecedent to the effective date of the amendments. This is not to say, and we do not decide, whether the repeal extends to all claims asserting antecedent events. It is enough for our purposes that the Legislature expressed an intent to extend the repeal to some class of antecedent claims. As will appear, if the statute applied to any such claims, it necessarily applies to plaintiffs claims. (See section E, below.)

2. Extrinsic Evidence of Legislative Intent.
Defendant contends that notwithstanding the text of subdivision (f), the legislative history of the 1998 repeal establishes that it was not intended to apply retroactively. This argument depends not on the history of the statute as it ultimately became effective but on the failure, by veto, of another measure introduced in that same session to abolish tobacco manufacturers' immunity under section 1714.45. The gist of defendant's argument appears to be that the other measure, Senate Bill No. 340 (1997-1998 Reg. Sess.) (SB 340), explicitly provided for retroactive effect; thus, defendant implies, the failure of that measure is a repudiation of such effect.
We find this contention unsound in a number of respects. First, although a court seeking to ascertain the proper application of a statute "may properly rely upon extrinsic aids, it should first look to the words of the statute to determine the Legislature's intent." (O'Kane v. Irvine (1996) 47 Cal.App.4th 207, 211, 54 Cal. Rptr.2d 549; see Kraus v. Trinity Management Services, Inc. (2000) 23 Cal.4th 116, 129, 96 Cal.Rptr.2d 485, 999 P.2d 718 ["If the language of a statute is clear and unambiguous, judicial construction is not necessary and a court should not indulge in it."]; J. A. Jones Construction Co. v. Superior Court (1994) 27 Cal.App.4th 1568, 1578, 33 Cal.Rptr.2d 206 [noting dangers inherent in "reading the tea leaves of legislative history"].) Here we see no need to resort to legislative history, or other extrinsic evidence, given the explicit references to past events and claims in subdivision (f).
Second, evidence of unenacted legislation has been repeatedly rejected as a basis for establishing the intent of enacted legislation. (E.g., People v. Escobar (1992) 3 Cal.4th 740, 751, 12 Cal.Rptr.2d 586, 837 P.2d 1100 ["`weak reed upon which to lean'"]; Snyder v. Michael's Stores, Inc. (1997) 16 Cal.4th 991, 1003, 68 Cal.Rptr.2d 476, 945 P.2d 781 [same]; id. at p. 1003, fn. 4, 68 Cal.Rptr.2d 476, 945 P.2d 781 [vetoed statute overturning prior decision "provide[d] no guidance"]; California Labor Federation v. Industrial Welfare Com. (1998) 63 Cal.App.4th 982, 994, 74 Cal. Rptr.2d 397 [disregarding vetoed bill overturning regulatory action]; Baldwin v. County of Tehama (1994) 31 Cal.App.4th 166, 181, fn. 10, 36 Cal.Rptr.2d 886 ["legislative history tea leaves"].)
Third, such light as SB 340 might shed on the legislative intent of SB 67 is unfavorable to defendant's position. SB 340 would have added a new section 1714.55 to the Civil Code dealing exclusively with the application of section 1714.45 to claims asserting specified theories of liability against tobacco manufacturers, their successors, *506 and tobacco industry research organizations. (SB 340 as enrolled Sept. 3, 1997; http://www.leginfo.ca.gov/pub/97-98/ bill/sen/sb_0301-0350/sb_340_bill_19970903 _enrolled.html as of Nov. 7, 2001.) The new statute would have: (1) declared section 1714.45 inapplicable to any action against one of the specified defendants by a person who did not voluntarily consume tobacco; (2) declared section 1714.45 inapplicable to any action against one of the named defendants sounding in fraud, misrepresentation, or conspiracy; (3) declared the legislative "intent" that section 1714.45 "never applied" to such actions; and (4) declared that American Tobacco, supra, 208 Cal. App.3d 480, 255 Cal.Rptr. 280, "misinterpreted the intent of the Legislature" to a stated extent such that the new statute would not change, but would be declaratory of, existing law. (SB 340, § 1.) The bill also contained a further uncodified expression of legislative intent of little apparent relevance. (Id., § 2.)
The governor's veto message, to which defendant does not allude, states that his refusal to sign the bill rests not on any desire to limit the abolition of the former immunity but on the belief that the bill was redundant of SB 67 and thus threatened to generate needless confusion. The governor wrote that he was refusing to sign the bill because it "creat[ed] exceptions to an immunity which no longer exists." (Governor's Veto Message to Sen. on Sen. Bill No. 340 (Oct. 3, 1997) (1997-1998 Reg. Sess.).) It was in that light that he believed its enactment "would ... serve no purpose," and that it would, if it became law, "create confusion over the meaning of the statute as it is now amended." (Ibid.) Thus the Governor's opinion that the proposed statute was redundant of SB 67, far from supporting defendant's argument, suggests that the Governor expected SB 67 to have a similar effecti.e., to apply to all claims within its scope regardless of when they arose or when the events on which they rested occurred.
Finally, while defendant fails conspicuously to discuss the legislative evolution of SB 67 itself, and while the legislative record lacks a "smoking gun" on the subject of retroactivity, we find substantial support in it for the premise that subdivision (f) was intended, and indeed its primary purpose was, to extend the abolition of the former immunity to at least some past events and claims. As originally proposed the bill contained no such provision. The first committee analysis on the bill contained the following comments under the heading "Prospective repeal only": "Some concern has been expressed that SB 67 would apply only to causes of action arising on or after January 1, 1998, assuming it is enacted this year. In the absence of specific language in the legislation specifying retroactive application, a measure will operate prospectively only upon its enactment." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Feb. 14, 1997, for hearing date of Apr. 8, 1997.) One week after this acknowledgment of "concern" about a prospective-only application of the amendments as then drawn, the bill was amended by the insertion of what is now subdivision (f). (SB 67, supra, as amended Apr. 16, 1997.)
The record also contains evidence that (1) the broad "immunity" found in American Tobacco came as a surprise; and (2) the original statute had been enacted under a mistaken understanding induced at least in part by the tobacco industry's own deceptions. In a Senate floor analysis, a supporter of SB 67 is quoted as follows: "`At, the time [of enacting former section 1714.45], it was not anticipated that the California courts would interpret [it] so broadly. Over the last decade, we have also learned much regarding the addictive *507 nature of tobacco and the industry's intentional efforts to mislead the public on the health effects of tobacco. This, coupled with the courts' broad interpretation of the California statute, has precipitated the need to change that statute and remove tobacco's liability protections.'" (Sen. Rules Com., Floor Analysis, Sen. Bill No. 67 (1997-1998 Reg. Sess.) as amended Aug. 11, 1997.)
We conclude that the legislative history does nothing to detract from, and if anything enhances, our conclusion that the express references to past events and claims in subdivision (f) must be applied to extend abolition of the statutory immunity to at least some events and claims antedating January 1, 1998.

D. Constitutionality.
Defendant asserts that application of the 1998 amendments so as to deny it the immunity provided by the previous version of the statute will violate the constitutional guarantee of due process of law and the prohibition against ex post facto laws. This, at any rate, is the assertion in defendant's argumentative heading. However, the ensuing text argues, not that such an application of the amendments is constitutionally prohibited, but that the statute must be construed not to permit such an application, under the "`cardinal principle' that statutes must be construed, whenever possible, to avoid raising constitutional issues." (Quoting United States v. Security Industrial Bank (1982) 459 U.S. 70, 78, 103 S.Ct. 407, 74 L.Ed.2d 235.)
First, defendant suggests that the Legislature cannot retroactively abolish a preexisting defense without violating the due process rights of a party who would otherwise have been entitled to raise that defense. The primary cited authority for this supposed rule is Morris v. Pacific Electric Ry. Co. (1935) 2 Cal.2d 764, 768-769, 43 P.2d 276. Although the analysis in that case is somewhat oblique, the real holding appears to be that a legislative change in the principles governing the doctrine of "negligence per se" was a substantive change in law which could not be accomplished without a clear indication of legislative intent. Defendant quotes, in heavily edited form, the following comment: "[T]he legislature may not, under pretense of regulating procedure or rules of evidence, deprive a party of a substantive right, such as a good cause of action or an absolute or a substantial defense which existed theretofore." (Id. at p. 768, 43 P.2d 276, italics added.) More critical to our analysis is a statement defendant ignores altogether: "The legislature did not assume to make the amendment retrospective and under the circumstances the court is not warranted in doing so." (Id. at p. 769, 43 P.2d 276, italics added.)
Defendant cites In re Marriage of Garcia (1998) 67 Cal.App.4th 693, 698-699, 79 Cal.Rptr.2d 242, where we cited Morris in holding that a statute silent as to its own application to past events could not, by the expedient of calling it "procedural," deprive a party of substantive defenses to which he had long since become entitled by passage of time. We did not purport to hold that retroactive application, if called for by the Legislature, would have been unconstitutional. Similarly, Zellers v. State of California (1955) 134 Cal.App.2d 270, 285 P.2d 962, was concerned with the effects of an enactment that did not purport by its terms to apply to pre-enactment matters.
Defendant also quotes the statement in Beck Development Co. v. Southern Pacific Transportation Co. (1996) 44 Cal.App.4th 1160, 1207, 52 Cal.Rptr.2d 518, that "[i]n general, legislation that makes certain conduct unlawful cannot be applied to conduct that was lawful and completed before its *508 enactment." Application of this proposition is conditioned on (1) categorization of the case in which it is asserted as falling within the "general" rule, and (2) characterization of the conduct at issue as having been "completed" when the statute took effect. Moreover, this generalization is expressly conceded by the court to rest largely or entirely not on any constitutional prohibition against a contrary result but on the "constructional policy against the retroactive application of legislation." (Ibid.) As we have seen, that policywhich is a presumption or preference and not, as defendant suggests, a prohibitionis overcome here by the express language of the statute. The court's general reference to "constitutional prohibitions" is no more effective than defendant's to establish that this case falls within such a prohibition.
In sum, none of the cases cited by defendant or known to us actually rests on the proposition that the Legislature lacks the power to retroactively abolish a defense it has previously created. Indeed we see little basis for such an argument. Even if the defense had become a vested righta dubious propositionsuch rights "`"may be impaired `with due process of law under many circumstances."'" (In re Marriage of Bouquet (1976) 16 Cal.3d 583, 592, 128 Cal.Rptr. 427, 546 P.2d 1371.) The dispositive question appears to be "`"whether such a change reasonably could be believed to be sufficiently necessary to the public welfare as to justify the impairment."'" (Ibid.) The Legislature might well conclude that it was, particularly in light of evidence, alluded to in the legislative record (see above), of concerted efforts by the tobacco industry to deceive smokers, the public, and legislators themselves concerning the dangerous effects of their products.
We also note that any claim of unfairness in the abolition of a statutory defense must take account of Government Code section 9606, which provides, "Any statute may be repealed at any time, except when vested rights would be impaired. Persons acting under any statute act in contemplation of this power of repeal." (Italics added.) On its face this provision sharply limits any claim by a defendant that its wrongful conduct is shielded by having been undertaken in reliance on the assurance provided by a statutory defense. Defendant contends in essence that it was entitled to market dangerous products and misrepresent their dangerousness because it had been promised that it could do so without fear of liability. The promise, however, was subordinated to an express legislative reservation of a power of revocation. Upon learning of the true nature of defendant's conduct, the Legislature exercised that power. We see no reason to suppose that defendant was any more entitled to rely on the statute as protection against inchoate claims, i.e., claims not yet presented and adjudicated, than a plaintiff would be to rely upon the continued future existence of a statutory cause of action not yet reduced to judgment.
We conclude that defendant has demonstrated no sufficient basis on which to hold that application of the 1998 amendments here would offend the due process clause.
Defendant also makes passing suggestions that application of the 1998 repeal to this case would constitute an ex post facto law in violation of the federal and state constitutions. This argument can have no bearing on an award of compensatory damages; the ex post facto clauses "`apply only to penal statutes.' [Citation.]" (Greenbaum v. State Bar (1987) 43 Cal.3d 543, 550, 237 Cal.Rptr. 168, 736 P.2d 754.) Defendant may be understood to suggest that the award of punitive damages was "penal" for purposes *509 of the constitutional prohibition, and thus that the 1998 repeal cannot authorize recovery of those damages based on conduct prior to its effective date.
Assuming a punitive damages award might be deemed "penal" for purposes of the prohibition against ex post facto laws, the prohibition only applies if the challenged law "makes that criminal or penal which was not so at the time the action was performed...." (Thompson v. Missouri (1898) 171 U.S. 380, 383, 18 S.Ct. 922, 43 L.Ed. 204; United Business Com. v. City of San Diego (1979) 91 Cal.App.3d 156, 172-173, fn. 7, 154 Cal.Rptr. 263.) (Italics added.) The statutory immunity asserted by defendant only existed from January 1, 1988, to January 1, 1998. Accepting for the moment the premise that penalizing conduct during that period would offend the ex post facto clause, the same cannot be said for conduct before 1988. That conduct, if subject to penalty when it occurred, would remain subject to penalty todayat least, the ex post facto clause is no impediment. The intervening period of immunity might be relevant to some issues, but would have no relevance to the ex post facto analysis.
It is at least arguable that defendant's most culpable conduct as to this plaintiff took place during the 1960s, while plaintiff was being induced as a teenager to become thoroughly addicted to cigarettes. The jury may well have imposed punitive damages entirely on the basis of that conduct, or on other conduct prior to 1988. We are directed to no evidence that defendant requested an instruction informing the jury that it could not award punitive damages based on conduct during the time the immunity was in effect (the immunity window). Indeed we are directed to no evidence that defendant ever sought to separate the ex post facto issue, as it arose under section 1714.45, from the claim of a total defense based on that statute. Since the ex post facto argument could at most warrant relief affecting punitive damages, and in that regard only to limit the evidence that the jury could consider, it was not adequately presented by a motion for nonsuit, and is not properly before us.

E. Application to Present Case.
We have concluded that the 1998 amendments to section 1714.45, and particularly the addition of subdivision (f) to that section, represent a clear expression of legislative intent that such immunity as existed under the original statute be repealed or abolished with respect to at least some past events and claims against tobacco companies. We need not decide whether some claims remain barred, or where the line lies between those that may be barred and those that may proceed. Subdivision (f) explicitly contemplates that some cases may proceed even though they were "brought" before the amendments took effect. This case was "brought" after the amendments took effect, and so far as has been shown on appeal, after the "accrual" of plaintiffs cause of action for limitations purposes. If subdivision (f) does not require the adjudication of this case "on [its] merits, without the imposition of the former "statutory bar or categorical defense," then we fail to see how that subdivision can serve any purpose whatsoever.[6]
We conclude that section 1714.45 was not a defense to this action.

*510 II.-VIII.[**]

DISPOSITION
The judgment is affirmed.
We concur: REARDON, P.J., and KAY, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III, IV, V, VI, VII, and VIII.
[1] All future references to former section 1714.45 are to the version in effect from January 1, 1988, to January 1, 1998.
[2] We use the term "addicted" as shorthand without meaning to declare as a judicial fact that tobacco is addictive in any settled medical sense. That question is not before us. The jury here presumptively found that tobacco was addictive in a sense supported by the evidence and supportive of the judgment.
[3] The same or related issues are currently pending before the Supreme Court in at least five cases: Myers v. Phillip Morris Companies, Inc. (9th Cir.2001) 239 F.3d 1029, certification accepted March 21, 2001 (S095213); Souders v. Philip Moms Inc. (2001) 87 Cal. App.4th 756, 104 Cal.Rptr.2d 821, review granted, May 16, 2001 (S096570); Naegele v. R.J. Reynolds (2000) 81 Cal.App.4th 503, 96 Cal.Rptr.2d 666, review granted, Oct. 18, 2000 (S090420); Bowyer v. Philip Morris, Inc. (Mar. 28, 2001) B145673 [nonpub. opn.], review granted, June 13, 2001 (S097441); Reynolds v. Philip Morris, Inc. (July 10, 2001) B141850, [nonpub. opn.], review granted, October 10, 2001 (S099989). In addition, as this opinion was being prepared for filing, the Fourth District published In re Tobacco Cases II (2001) 93 Cal.App.4th 183, 113 Cal.Rptr.2d 120. The court there concluded that nothing in the statute "unmistakably express[ed] any legislative intent that the amended statute be applied retroactively." (Id. at p. 208, 113 Cal. Rptr.2d 120.) Our study of the statutory language has led us to the contrary conclusion.
[4] Defendant's claim of erroneous admission of evidence is not cognizable in the absence of an objection below on the ground now asserted. (Evid.Code, § 353, subd (a).) Defendant's statement that the evidence was admitted "despite objection" is somewhat disingenuous: the cited objections had nothing to do with the issue now under discussion. Defendant's complaint that the trial court should have instructed the jury to disregard evidence of conduct supposedly immunized by the statute founders on the acknowledged fact that no such instruction was proffered or requested. Nor does the cited authority (Mock v. Michigan Millers Mutual Ins. Co. (1992) 4 Cal.App.4th 306, 333-334, 5 Cal. Rptr.2d 594) support defendant's claim that the court was required to give such an instruction on its own motion. Finally, in ruling on post-trial motions the trial court was entitled to consider objectionable evidence to which no objection was asserted. (3 Witkin, Cal. Evidence (4th ed. 2000) Presentation at Trial, § 393, p. 484; Cal. Law Rev. Com. com., West's Ann. Evid.Code, § 140.)
[5] Defendant has burdened an already mammoth record with vast quantities of unpublished authority from other jurisdictions. Our own unpublished opinions are not authority, and parties are forbidden to cite them as such. (Cal. Rules of Court, rule 977(a).) Nor does a written opinion by a California trial court possess precedential value. (Santa Ana Hospital Medical Center v. Belshé (1997) 56 Cal.App.4th 819, 831, 65 Cal.Rptr.2d 754; see Neary v. Regents of University of California (1992) 3 Cal.4th 273, 282, 10 Cal.Rptr.2d 859, 834 P.2d 119, quoting Fenske v. Board of Administration (1980) 103 Cal.App.3d 590, 596, 163 Cal.Rptr. 182 ["`[T]rial courts make no binding precedents.'"].) The federal district courts are trial courts, and their opinions are subject to this same principle. (Bowen v. Workers' Comp. Appeals Bd. (1999) 73 Cal. App.4th 15, 20, fn. 8, 86 Cal.Rptr.2d 95.) Indeed, on questions of state law no federal court opinion is binding on useven that of the United States Supreme Court. (East Quincy Services Dist. v. General Accident Ins. Co. (2001) 88 Cal.App.4th 239, 246, 105 Cal. Rptr.2d 694.)
[6] This analysis makes it unnecessary to address plaintiff's argument that because her claim "accrued" after the effective date of the 1998 amendments, application of those amendments here would not be retroactive.
[**] See footnote *, ante.